# DECISIONS

—— OF THE ——

# SUPREME COURT OF FLORIDA.

## JUNE TERM, A. D. 1893.

WILLIAM M. LEDWITH, APPELLANT, VS. CITY OF JACKSONVILLE ET .AL., APPELLEES.

1. A cross-bill is one brought by a defendant in a suit against the complainant in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill, and is considered as an auxilliary suit or as a dependency upon the original bill, and can be sustained only on matter growing out of the original bill. Such cross-bill may set up new matter arising subsequently, but still it must constitute part of the same defense or relate to the same subject-matter in such a way as to be a defense to the original suit.

2. A supplemental bill is considered merely as an addition to the original bill, and while it is often permissible and proper to introduce matter that has occurred after the institution of the suit, and of such a nature as can not be properly the subject of an amendment, yet such new matter must not be such as to change the rights and interests of the parties before the court.

3. The matter brought forward in the supplemental cross-bill in the case at bar, held to be no defense to the original bill filed against the city of Jacksonville, appellee here.

*Cooper & Cooper* for Appellant.

*Stephen E. Foster* for Appellees.

MABRY, J.:

In September, A. D. 1889, the appellant, William M. Ledwith, filed a bill in the Circuit Court for Duval county against the city of Jacksonville, the city council and board of health of said city, to enjoin them from preventing him and his tenants from selling fresh meats and dressed poultry in a building situated on the east half of water lot number 10 in said city. The building is alleged to be the property of appellant, and was constructed with the approval and sanction of said city, and had for some eight or nine years before the filing of the bill, been used as a public market for the sale of fresh meats and dressed poultry for the city of Jacksonville under contracts with said city, and the said building was at the time of filing this bill in every respect suitable for a public market, and in perfect sanitary condition. The bill specified the various particulars in which said building was suitable as a public market place, including adequate and necessary refrigerator accommodations, but it does not become necessary for the purposes of this decision to set them out here.

It is alleged that the city of Jacksonville and her said officers, acting under certain pretended ordinances attempted to be passed by said city, were daily arresting the tenants of appellant doing business at his said building, and had declared their purpose to drive them away and break up the vending of fresh meats thereat. The ordinances are alleged to be invalid for various reasons, both on account of defects on their

face and on account of certain mentioned illegal objects and purposes designed to be accomplished by them. The court granted, on the prayer of the bill, an injunction restraining the city and her officers, and all persons acting or claiming to act by, through or under any of the defendants in the bill, from preventing the complainant therein, William M. Ledwith, his tenants, lessees, or any person authorized by him, to sell fresh meat in said building; and from entering upon said building and preventing the use of the same for the sale of fresh meat, or from denying to complainant the right of renting and leasing space and stalls therein or any portion thereof for the sale of such meats; and from threatening, molesting, disturbing or annoying complainant's tenants, lessees or any person or persons authorized by him in the sale of fresh meats in said building; and from publicly proclaiming or declaring in the name of said city that complainant's said building or any part thereof should not be used for the sale of fresh meats, until the further order of the court.

The respondents answered the bill, and therein relied upon the ordinances mentioned in the bill as authorizing and justifying their action in attempting to prevent the sale of fresh meat and dressed poultry in the said market building of complainant. The ordinances in question sought to establish a public market for the city at a building on water lot twenty-four, new number, in said city, and to prevent the sale of fresh meat, dressed poultry and fish at any other point. except in such one-stall markets as might be established with the permission of the city council. The answer contained many allegations not necessary to be referred to, but it is only sufficient to say that the entire de-

fense sought to be interposed rested upon the validity of the said city ordinances.

After replication filed to the answer, the court on the 5th day of November, 1889, refused to dissolve the injunction granted, upon motion made for that purpose, and the city appealed from that decision to this court.

The affirmance here of the court's ruling in refusing to dissolve the injunction will be found in the case of City of Jacksonville et al. vs. Ledwith, 26 Fla., 163, 7 South. Rep., 885. The ordinances upon which the city's defense rested were held to be void, and a very full and exhaustive discussion of the grounds for so holding will be found in the opinion filed in that case.

Subsequent to the decision here the city of Jacksonville on the 5th day of August, 1890, passed another ordinance which was approved the 9th day of that month, to regulate the vending of fresh meats, dressed poultry and fish, and to establish and regulate markets. The second section of this ordinance was amended in September, 1890, the amendatory ordinance receiving the approval of the mayor on the 19th day of that month. It is only necessary to refer to the leading features of this ordinance, as amended, to understand its purport and objects. By it the buildings on water lot twenty-four, new number, fronting on Market street, is declared to be a public market for the city of Jacksonville, and not elsewhere, and every day in the year, except Sundays, are declared to be market days. All persons are prohibited from selling or offering for sale any fresh meats, dressed poultry or fish at any place within the territory bounded by Duval street on the north, Catherine street on the east, the city limits on the south, and Julia street on the

west, except at the said public market; and no person shall sell or offer for sale any fresh meats, dressed poultry or fish outside of said territory, unless such person shall have a license to sell the same, procured under the provisions of the ordinance, and then only in buildings constructed, maintained and furnished in accordance with the requirements thereof, and which buildings are thereby designated as private markets. Any person may obtain a license to sell fresh meats, dressed poultry and fish for the period of one month by payment to the city treasurer of five dollars in advance, the license to be issued by the treasurer on receipt of the money. Such licenses shall end on the first of the month, and may issue for fractional portions of the month upon payment of the proper proportion of the fee, and all such licenses shall authorize the selling of fresh meats, dressed poultry and fish only within buildings constructed and maintained in accordance with the requirements of the ordinance outside the limits prescribed in the establishment of the public market, and the other requirements of the ordinance. The ordinance contains certain general regulations in reference to the conduct of all markets in the city, such as prohibiting the bringing to or offering for sale in any market or elsewhere in the city unwholesome meat or any live poultry not in a healthy condition, or the flesh of any animal which was sick when butchered, or which died a natural death, or was killed by accident, or otherwise than in the usual manner of slaughtering animals for food ; the prevention of the obstruction to the passage way to and through any market house, or the deposit of decayed vegetable or animal matter in or about any market house, and the smoking of cigars, pipes and cigarettes in a

market place during market hours ; the regulation of the transportation of fresh meats through the streets of the city ; the establishment of scales and measures conforming to the standard of weights and measures of the State of Florida; and the creation of the office of market inspector and prescribing his duties ; and the regulation of the days and hours for keeping open the markets in said city.

The ordinance also provides that the private markets shall have water-tight floors of yellow pine heart plank or Portland cement, or both, at least one inch in thickness, placed on solid foundation. The floor surface with reference to drainage in said markets is regulated, and the entire construction of such markets is required to be under the supervision and approval of the city engineer, and subject to daily inspection of the city inspector. The ordinance also provides that each private market shall have but one stall, which shall be three feet wide and six feet in length, and galvanized iron hooks shall be provided upon the stalls where meats and dressed poultry are exposed. Refrigerators must be provided for in the private markets for the storage of meats, fish and dressed poultry, and the refrigerators shall be approved by the market inspector. The fee of five dollars required to operate a private market is declared to be a license fee for the payment of the cost of police regulation and inspection of markets; and this money, together with all other moneys collected as license fees under this ordinance, is required to be kept separate as a fund to be used exclusively for the payment of the expenses actually incurred by the city for the inspection and regulation of markets and the vending of fresh meats, dressed poultry and fish.

The twenty-third section of the ordinance provides that the stalls in the public market shall be set apart for the sale of meats, fish, vegetables and other provisions, as the board of public works shall from time to time direct. A sufficient number of stalls shall be provided by the board of public works to meet all demands therefor. The twenty-fourth section enacts that the stalls in the public market shall be numbered, and then rented by the board of public works to the highest bidder at public auction, in the market house at 12 o'clock M., on the first Monday in November annually; provided, that until November next the board may make such arrangements for the renting of stalls as they may deem proper. Any stall or stalls which may thereafter at any time be unrented or unoccupied shall be rented by the board of public works until the first Monday in November to the highest bidder at public auction in the market house, after such notice as the board of public works may deem reasonable, such notice to be posted on a bulletin board at one of the entrances to the public market; but no stall shall be rented for a longer period than one year, and the terms of payment shall be monthly in advance, with security in double the amount of the rent which will accrue by the first Monday in November next ensuing, which security shall be approved by the board of public works. The board of public works shall mark out in the public market building such space or spaces as they may deem necessary to be used for refrigerators, and shall advertise and sell to the highest bidders such spaces at public auction, giving such notice thereof as they may deem necessary. The space so advertised may be

sold for such length of time, and with such privileges of renewals as the board of public works may deem advisable.

The punishment provided for a violation of any of the provisions of the ordinance is a fine not exceeding $500, or by imprisonment for a term not longer than three months, for the same offense.

On the 5th day of September, 1890, and after the return of the mandate of this court to the Circuit Court, the respondents in the bill of complaint made a motion to dissolve the injunction before granted, on the ground that since the granting of the same the ordinance above referred to had been passed, approved and published by the proper authorities of the city of Jacksonville, the provisions of which were being daily violated in complainant's buildings, and that by the terms of said injunction said city is restrained from enforcing said ordinance. This motion was refused on the ground that the court could not act upon the matter in the present condition of the record.

In January, 1891, respondents by their solicitor, filed a petition to be allowed to file a bill in the nature of a supplemental bill, and therein set forth the proceedings in the cause up to and including the decision of this court on appeal; and also that since the affirmance of the decision of the lower court, new matter had transpired and arisen, important and material in the cause, and which new and material matter is alleged to be the passage of the ordinance of August, 1890, with its amendment in the following September; that under this ordinance the board of public works of said city has numbered the stalls in the public market, and at 12 o'clock M., on the first Monday in November, 1890, offered them for rent at

public auction to the highest bidder as provided in said ordinance. Further, that a large number of persons, tenants of complainant Ledwith, are daily engaged in selling fresh meats in his said building in violation of said ordinance, which is reasonable and just, and under it suitable accommodations have been and will continue to be furnished, and that as said city and its officers are advised, the injunction heretofore granted is still in force, and any attempt on their part to enforce said ordinance against the tenants of said complainant will render them liable to punishment for contempt of court, and that said city and its officers are by said injunction deterred and prevented from carrying out and enforcing said ordinance.

It is also stated in this petition that the passage of the said ordinance with its amendment, in August and September, 1890, annihilated all right of said complainant to the relief prayed for in his bill, but under the circumstances respondents were not able to put in issue the said ordinance, or plead the same in bar of his said suit. The petition prays that the order dated the 5th day of November, 1889, overruling the motion to dissolve the injunction, be vacated and set aside, and that respondents be granted leave to file an original bill in the nature of a supplemental bill against said complainant, Ledwith, with apt words to set forth the said new matter above mentioned, and that the cause be reheard at such time as a hearing may be had upon the supplemental bill.

Upon consideration of this petition the court granted leave to file the bill prayed for, and on the same day (21st of January, 1891), respondents filed a bill in the nature of a supplemental bill.

The allegations in Ledwith's bill against the city

and its officers, their answer thereto, and the former proceedings in the cause up to and including the decision of this court on the appeal from the order refusing to dissolve the injunction, are referred to and made a part of this supplemental bill.

It is further alleged that since the said proceedings the city of Jacksonville in legal form has passed the ordinance of August, 1890, with the amendment, to which reference has been made, and that under its provisions the board of public works of said city has numbered the stalls in the public market mentioned in said ordinance, and at 12 o'clock M., on the first Monday in November, 1890, offered said stalls for rent at public auction to the highest bidder. That a large number of persons, tenants of said William M. Ledwith, are daily engaged in selling fresh meats and and dressed poultry in the said Ledwith building on water lot ten, within the territory bounded by Duval street on the north, Catharine street on the east, the city limits on the south, and Julia street on the west, and not at the public market established by the city in and by the said ordinance. That the city of Jacksonville and its officers are prepared to furnish ample accommodations in the building established as and for a public market for all persons desiring to engage in the business of selling fresh meats, dressed poultry and fish within the said prohibited territory, and that said accommodations are offered and will be furnished at a fair and moderate rental on reasonable terms of payment, and which rental is less than Ledwith charges his tenants. Further, that the said ordinance is reasonable and just, and the enforcement of its provisions is expedient and necessary for the promotion of the welfare and prosperity of the citizens of said

city, and the protection of the health of the same, and that said ordinance is valid and legal, and that the selling of fresh meats, dressed poultry and fish by the tenants of the said Ledwith in his said building is in violation of said ordinance, but complainants in the supplemental bill are advised that the injunction heretofore granted is still in force, and any attempt on the part of the said city or its officers to enforce the provisions of said ordinance as against the said Ledwith and his tenants will render them liable to punishment for contempt, and that said city is deterred by said injunction from carrying out and enforcing said ordinance against the said Ledwith and his tenants. That by the passage of said ordinance all right of the said Ledwith to the relief prayed in his bill has become annihilated, but under the circumstances complainants in the supplemental bill are unable to put in issue said ordinance, or plead the same in bar in the suit of Ledwith against them.

The special prayer of the bill is, that said ordinance be declared a sufficient bar to any further proceedings by said William M. Ledwith in his said suit, and that his said bill may be dismissed.

Ledwith, through his counsel, made a motion to strike from the files the bill in the nature of a supplemental bill, on the ground that it does not state a proper case for such a bill. This motion was denied, but it was ordered by the court that said bill stand as a supplemental cross-bill. Ledwith answered this bill, and upon replication filed, proof was taken and final decree rendered in favor of the complainants in the supplemental cross-bill, and the injunction formerly granted in the cause was modified so as not to interfere with or in any manner hinder the enforcement of

the provisions of the said ordinance by the city, and that said injunction be dissolved, and said ordinance as amended be a sufficient bar to any further proceedings by said Ledwith in his said suit. Ledwith has appealed from this decision.

In view of the conclusions reached cn this record, it becomes unnecessary to refer specially to the allegations of Ledwith's answer to the supplemental cross-bill. It is sufficient to say that his answer attacks the subsequent ordinance of 1890, as amended, both upon matters apparent upon its face, and on account of the objects, purposes and motives of its passage.

It is clearly manifest from the record that the acts and doings of the city of Jacksonville and her officers, about which Ledwith complained in his bill, and against which he sought and obtained an injunction, occurred long prior to the passage of the ordinance of August, 1890, and which is set up in the cross-bill filed by the respondents to the original suit. Ledwith's bill was filed in September, 1889, for the purpose of restraining the city of Jacksonville and her officers from arresting his tenants and molesting him in the conduct of a market business at a certain building situated in the city, by virtue of certain pretended ordinances attempted to be passed by said city in that year. The city relied upon said ordinances as a justification for her acts and doings in preventing complainant from carrying on the market business for the sale of fresh meats at his said building. The ordinances then in question were void, and have been so declared. City of Jacksonville vs. Ledwith, 26 Fla., 163, 7 South. Rep., 885. Some twelve months after the filing of Ledwith's bill, and after the ordinances brought in question by that bill had been declared

void, the city of Jacksonville ordained another ordinance on the subject of vending fresh meats, dressed poultry and fish, and this ordinance is brought forward in what is called a supplemental cross-bill to modify and vacate the former injunction granted in the case. The question is, to what extent can this be done? Judge Story, in his book on Equity Pleading, Section 389, says: "A cross-bill *ex vi terminorum* implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill." He also says that such bill is usually brought either to obtain necessary discovery of facts in aid of a defense to the original bill, or to obtain full relief to all parties touching the matters of the original bill. The subject-matter of the cross-bill must be the same, or, as expressed by the author just quoted, must touch the matters of the original bill. A cross-bill is considered as an auxilliary suit or as a dependency upon the original bill, and can be sustained only on matter growing out of the original bill. While the cross-bill may set up new matter arising subsequently, still the new matter must constitute part of the same defense or relate to the same subject-matter. Without such restriction new matter might be introduced into litigation by cross-bills without end. As a complete defense to the original suit, a cross-bill may become proper and necessary; but it can not be converted into a separate and distinct suit relative to other and different matters, or become the foundation of a decree concerning matters not embraced in the original suit. Slason vs. Wright, 14 Vt., 208; Town of Rutland, 24 Vt., 181; May vs. Armstrong, 3 J. J. Marshall, 260;

Daniel vs. Morrison's Executor, 6 Dana, 182; Gala-
tian vs. Erwin, 1 Hopkins' Chy., 48; Field vs. Schief-
felin, 7 Johnson's Chy., 250; Pindall vs. Trevor &
Colgate, 30 Ark., 249; Cross vs. De Valle, 1 Wall.,
5; Canant vs. Mappin, 20 Ga., 730; Griffin vs. Fries,
23 Fla., 173, 2 South. Rep., 266. In Rubber Com-
pany vs. Goodyear, 9 Wall., 807, the rule stated by
the Supreme Court of the United States is as follows,
*viz.:* "A cross-bill is brought to obtain a discovery in
aid of a defense to the original suit, or to obtain com-
plete relief to all the parties as to the matters charged
in the original bill. It should not introduce any dis-
tinct matter. It is auxilliary to the original suit, and
a graft and dependency upon it. If its purpose be
different from this it is not a cross-bill, though it may
have a connection with the same general subject." In
Pindall vs. Trevor & Colgate, *supra*, it was ruled that
where the allegations of a cross-bill are foreign to the
subject-matter of the original bill, it should not be
allowed to be filed; or, if filed, should be stricken
out. It is said that a cross-bill may be filed to answer
the purpose of a plea *puis darrein continuance* at
the common law, as where pending a suit and after
replication and issue joined, the defendant obtains a
release. The release not being in issue, he will not be
permitted to prove it, and hence the necessity of mak-
ing such an issue in the pleadings. Mitford's Plead-
ing, 124. But while this is true, it is essential that
the new matter brought forward in the cross-bill be so
related to the subject-matter of the original suit as to
be in defense of it. This is the rule sustained by the
authorities.

The introduction of the new matter in this case by
what is designated a *supplemental* cross-bill does not

change the rule as to the nature of the matter to be brought into controversy in the case. A supplemental bill is considered merely as an addition to the original bill, and while it is often permissible and proper to introduce matter that has occurred after the institution of the suit, and of such a nature as can not be properly the subject of an amendment, yet such new matter must not be such as to change the rights and interests of the parties before the court. Story's Equity Pleading, Sections 332 and 336 ; Hornor vs. Hanks, 22 Ark., 572. Calling the pleading here a supplemental cross-bill does not alter the case.

How can the passage of the subsequent ordinance in 1890 in any way validate or sustain the action of the city authorities in attempting to enforce the void ordinances passed in the year 1889? We are unable to see that it can be invoked for any such purpose. Ledwith's bill was directed against the acts of the city in 1889 under void ordinances, and it has been adjudicated that such acts were illegal and without proper municipal authority. The city of Jacksonville has not undertaken to validate, if it had any such authority, the void ordinances, but has passed a new ordinance on the same subject—that of vending fresh meats. Conceding that such new ordinance is valid, it is entirely prospective, and can afford no protection for anything done before it went into effect. A prospective law does not affect the rights of parties accruing before its passage. This being the case, the passage of the city ordinance in 1890 is not so related to the subject-matter of the original suit between Ledwith and the city as to be the proper subject of litigation in it. Draper vs. Gordon, 4 Sandford's Chy., 210. The ground upon which such new matter is sought to

be introduced is, we think, entirely without support. The injunction originally granted on Ledwith's bill was based upon allegations therein, and can not be held to prohibit the city, by legal ordinances, from regulating in a legal manner the sale of fresh meats, dressed poultry and fish in the city. The object of Ledwith's bill was not to prevent the city of Jacksonville from passing ordinances on the subject of vending fresh meats, or of enforcing them. The language of the injunctional order can not be so construed. When it was ordered that the city and her officers be restrained from arresting Ledwith's tenants, from molesting him and his agents in the sale of fresh meats at the building mentioned, or from publicly proclaiming and declaring in the name of the city that said building can not be used for the sale of fresh meats, it had reference to the rights of the parties as then existing and disclosed by the averments in the bill. Considering the case made by the original bill and the injunction granted thereon, we think it entirely clear that the city was placed thereby under no legal restraint as to future action in regulating, by ordinance, market houses, although it might affect the market house of Ledwith. If such was the case, the city was in contempt in passing the subsequent ordinance of 1890, as it was therein declared that a certain building other than that of Ledwith should be the public market within certain territory in said city, and prohibited the sale of fresh meats at any other public market. We think the court was in error in permitting the supplemental cross-bill to stand, and in making any decree upon the matters therein contained affecting in any way the former decision of the court.

The entire trial in the Circuit Court was upon the issues involving the validity of this ordinance presented by the cross-bill and answer thereto, and the argument of counsel here is confined to these issues. These issues, as we have seen, were not proper to be introduced into the original suit of Ledwith, and the only way they can come into consideration is by treating the cross–bill as an original bill and presenting an entirely new suit. If we were to do this, we fail to discover any equitable grounds upon which the city can stand. So far as we know, all that she has done is to pass the ordinance sought to be brought in question, and has not undertaken to enforce it in any way. No one is complaining, so far as we know, of anything done under the ordinance, and no question has arisen on account of any acts by virtue thereof. The cross suit, as an independent action, must have an equity to support it. Griffin vs. Fries, *supra.* If the ordinance be valid, the city is invested with legal power to enforce it; and if it be invalid, it will be the privilege of any one affected by its attempted enforcement to call it in question.

On the record before us we do not see that we are called upon to say anything as to the validity of the ordinance passed in 1890.

The decree of the court appealed from must for the reasons given be reversed, and judgment will be entered here accordingly.