Biscayne Realty & Insurance Company, a Corporation, *Appellant,* v. Ostend Realty Company, a Corporation, First Presbyterian Church of Coral Gables, a Corporation, Clarence M. Busch and Bonnie M. Busch, his wife, and Eleanor R. Shutt, a single woman, *Appellees.*

148 So. 560.

En Banc.

Opinion filed March 11, 1933.

Opinion on re-hearing filed May 23, 1933.

Re-hearing denied July 6, 1933.

2

*James M. Carson* and *Williard & Dressler,* for Appellant;

*Kurtz & Reed* and *Mabry, Reaves, Carlton & White,* for Appellees.

JOHNSON, *Circuit Judge.*—The appellant in this case, who was the complainant in the court below, filed in the Circuit Court for Dade County, Florida, a creditor's bill praying that certain parcels of land, described in the bill of complaint, be decreed to be subject to a judgment and execution obtained by the appellant against the defendant, Ostend Realty Company, and praying that certain deeds by the said Ostend Realty Company to the several defendants, other than the Ostend Realty Company, be decreed to be fraudulent as to appellant's judgment and execution.

The bill of complaint divides the lands into four parcels. This for convenience, and for a better understanding of the facts and conveyances as to each parcel.

The salient facts as disclosed by the record are:

It appears from the record in this case that the defendant, Clarence M. Busch, on his own behalf and on behalf of his

wife, Bonnie M. Busch, was in the real estate business in Dade County, Florida. The record discloses that it was in the year 1925 and subsequent years. Deeds to four parcels of land are brought into question by the bill of complaint. It appears that when a tract or parcel of land was purchased a deed to same would be taken to the defendant, Ostend Realty Company, a corporation. · This defendant corporation was a New York corporation qualified to do business in the State of Florida. The defendant, Clarence M. Busch, controlled the corporation, owning all the stock except a sufficient number of shares in the names of other persons to make it a legal corporation. The testimony discloses that the corporation had no assets; that it had practically ceased to do business since 1920; that the corporation was only used as a convenience and a medium for taking title to the lands purchased, and until such title should pass to the beneficial owner. It appears from the testimony that this corporation had no funds of its own, and never invested one dollar in any of the lands purchased, the title to which is questioned by the bill of complaint. It appears that, in instances, the lands purchased were subject to large outstanding mortgages, and in some instances several mortgages that had to be taken care of, and the payment thereof assumed by the purchaser. In addition to this notes and mortgages had to be given to evidence and secure an unpaid balance of the purchase price. As we see it the corporation was used for the purpose that each transaction, or purchase of land, would stand or fall on its own merits. That the lands purchased would stand for security for all outstanding mortgages against the land so purchased, and would also stand for security for any balance due on the purchase price.

It appears from the testimony that "Parcels" No. 1 and No. 4 were purchased with funds of the defendant, Bonnie

M. Busch. Title to these two parcels was originally taken in the name of the Ostend Realty Company, but later the two parcels were conveyed to the defendant, Bonnie M. Busch, the beneficial owner.

It appears from the testimony that "Parcels" No. 2 and No. 3 were purchased by the defendant, Clarence M. Busch, on his own account. The balance due on the purchase price of Parcel No. 3 gave rise to the present suit. Title to these two parcels were originally taken in the name of the Ostend Realty Company.

The contract for the purchase of Parcel No. 3 was entered into on August 29th, 1925. The purchase price was $55,000.00. We quote:

"Terms and conditions of sale: Five Thousand Dollars cash, receipt of which is hereby acknowledged, Thirteen Thousand Three Hundred and Thirty-three and 33/100 ($13,333.33) dollars on or before thirty days from date of August 29th, 1925; assume first and second mortgages for $5,500.00 each due 1, 2 and 3 years from January 2, 1925, interest 8 per cent.; assume third mortgage for $10,250.00, due 1, 2 and 3 years from approximately May 20, 1925, interest 8 per cent.; balance in one year from closing this sale at 8 per cent. interest, payable semi-annually said balance to be evidenced by promissory notes secured by a fourth mortgage on the property herein described for $10,416.67. Interest prorated to date of closing this sale. Purchaser pays taxes subsequent to date of settlement."

In pursuance of this contract a deed of conveyance was made to this parcel of land, Parcel No. 3. The deed is dated September 15th, 1925. The deed was executed by H. G. Cook and C. H. Cook, co-partners doing business as Biscayne Realty Company, their wives joining. The deed

was given subject to the three mortgages as set forth in the contract of purchase.

It appears that the note and mortgage given by the Ostend Realty Company, grantee in the deed, as evidencing and securing the balance of the purchase price, $10,416.67, were executed and delivered to, and in the name of, Biscayne Realty and Insurance Company, mortgagee, and the complainant in this cause.

The complainant in this cause, Biscayne Realty & Insurance Co., doesn't bring suit to foreclose its mortgage but goes into the law side of the court and secures a judgment. This it had a right to do under the holding of this Court in the cases of Webber v. Blanc, 39 Fla. 224, and J. J. Sparks Enterprise, Inc., v. Christian, 85 Fla. 928.

After all the testimony had been taken and the report of the Master in Chancery thereon filed the complainant, by leave of the Court, filed a supplemental bill of complaint. The supplemental bill of complaint sets forth that the transaction in which this promissory note was given was a transaction by, and for the benefit of, the defendant, Clarence M. Busch, and that by reason of this the said Clarence M. Busch was personally liable on the said note. The supplemental bill prayed that the judgment against the Ostend Realty Co. be decreed to be a judgment against Clarence M. Busch personally; that he, Busch, be decreed to pay and that execution issue therefor. A demurrer to the supplemental bill was sustained. A final decree was entered in favor of the defendants.

The complainant, appellant, makes three assignments of error: first, that the Court erred in sustaining defendants' demurrer to the supplemental bill of complaint; second, that the Court erred in sustaining certain exceptions to the Mas-

ter's report; and third, that the Court erred in rendering final decree in favor of the defendants.

As to the first assignment of error. The supplemental bill was based on the general proposition that an individual cannot transact his personal business, or personally reap the benefits of a transaction, to the injury or detriment of a third person, and escape liability under a corporate cloak. And likewise that a corporation cannot escape liability under the cloak of an individual. Holding that the courts look to the substance of the transaction and not to the form. In examining the cases holding to this doctrine we find the underlying principle to be the prevention of fraud. The leading case cited by appellant is the case of Donovan v. Purtell, 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (NS) 176. In this case it appears that Donovan collected $1,200.00 belonging to Purtell. Donovan was the dominant and controlling stockholder in two corporations used by him in his business. He undertook to use the $1,200.00 and satisfy Purtell with inadequate security and obligations of the corporation. Purtell brought suit against Donovan for money had and received and the court sustained her action. In this case the Court said:

"The proof tends to show that, when appellant received appellee's money, he was not conducting business under a bona fide corporate organization, but was using a corporate entity for the transaction of his private business, and, as he was, therefore, personally liable to the appellee for the repayment of her money, his promise was to pay his own debt, and not the debt of a third person."

In examining cases holding to this doctrine we find that the courts grant relief in the particular case to prevent a fraud. We find that the relief is granted in a proper proceeding either in law or in equity.

The promissory note, which was the basis for the final judgment against the defendant, Ostend Realty Co., was given by the Ostend Realty Co., as evidencing the balance due for the purchase price for the lands described in Parcel No. 3, as set forth in the bill of complaint. The total purchase price to be paid for this parcel of land was $55,000.00. More than $18,000.00 of this amount was paid in cash. The conveyance to the land was made subject to three outstanding mortgages aggregating $21,250.00. The balance due of the purchase price, $10,416.67, as evidenced by the promissory note sued on, was secured by a purchase money mortgage on the lands so purchased and conveyed. We cannot see where any fraud was perpetrated, or undertaken to be perpetrated, in this transaction.

If we admit that there was merit in the matter set up in the supplemental bill of complaint then the complainant, Biscayne Realty & Insurance Company, had three courses, or remedies available.:

First, it could have pursued the remedy of obtaining judgment against Ostend Realty Co., it did pursue, or, second, it could have sued the defendant, Clarence M. Busch, doing business in the name of Ostend Realty Co., and have obtained whatever judgment the court found it entitled, or, third, it could have brought suit to foreclose its mortgage. In a suit to foreclose the mortgage, if the facts developed warranted, a supplemental bill might have been in order, or, a bill in the nature of a bill of review might have obtained if timely filed.

. Prior to the enactment of Chapter 5137, Acts 1903, (Sec. 5035 C. G. L. 1917)ⁱ a creditors' bill would not be entertained except on a final judgment and execution thereon returned *nulla bona* Section 5035 C. G. L. now provides:

. "A creditors' bill may be filed in the courts of this State,

having chancery jurisdiction, before the claims of indebtedness of the persons filing the same shall have been reduced to judgment, but no such bill shall be entertained by such court, unless the complainants therein shall have first instituted suits in the proper courts at law for the collection of their claims; and no final decree shall be entered upon such creditors' bill until such claims shall have been reduced to judgment."

We have found no authority of law that would sanction the decreeing of a judgment, or the entry of a money decree, on a creditor's bill such as was filed in this case.

After consideration it is our opinion that the second and third assignment of errors are not well taken.

Finding no error, the decrees appealed from are affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, J.—This case is on re-hearing. The former opinion was filed March 11, 1933. It was orally argued on re-hearing by Honorable James Carson for the appellant and Honorable O. K. Reaves for appellees.

A creditors' bill was filed by the appellant, Biscayne Realty & Insurance Company, a corporation, against Ostend Realty Company, a corporation, First Presbyterian Church of Coral Gables, a corporation, Clarence M. Busch and Bonnie M. Busch, his wife, and Eleanor R. Shutt, a single woman. A demurrer to the bill was overruled and that order was affirmed. See Ostend Realty Co. v. Biscayne Realty & Ins. Co., 99 Fla. 1221, 128 South. Rep. 643.

The purpose of the bill is stated in the case cited above to be one to set aside and declare null and void certain conveyances of land made by the Ostend Realty Company to the several persons named in the bill as having been in fraud of the complainant, a creditor of the Ostend Realty Company,

the complainant holding an unsatisfied judgment against the Ostend Company. Answers were interposed to the bill. The case was referred to a master with instructions to report his findings of law and fact. The master made his report and the court entered a decree in July, 1931. The court decreed that the equities were with the defendants, that the complainant was not entitled to the relief sought and that the bill should be dismissed. From that decree the complainants took an appeal which was affirmed as stated above on March 11, 1933, in an opinion by Hon. J. B. Johnston, Circuit Judge, who sat in place of the writer who was absent on account of illness.

A re-hearing was granted, the petition for re-hearing containing many citations of decisions from Florida and other States relating to points of law which it is argued the court erroneously decided.

A brief statement of the facts which seem to be established by the pleadings and the evidence is probably necessary to a clearer understanding of the controversy. The Ostend Realty Company is a New York corporation incorporated in 1905. It was organized for the purpose of holding title to New York apartment houses and hotels owned by Clarence M. Busch, who was its President and retained that position to the date testimony was taken in this case. Mr. Busch owned all the stock of the corporation except the "qualifying shares." In 1925 or 1926 Mr. Clarence M. Busch became interested in Florida real estate on the east coast in the vicinity of Miami. He purchased several tracts of land taking the title in the Ostend Realty Company as he had done in "handling business of that character since 1905." It was convenient for him to do so although his money was used in the purchase of many tracts. He kept the records of the company in his house and always had access to them.

Even property purchased from Mrs. Busch and with her funds was purchased in the name of the Company. In many such transactions where lands were acquired by the Ostend Company in its name it had not the "slightest interest" in the land.

In some one or more of such transactions the Ostend Realty Company in its name became indebted to the Biscayne Realty & Insurance Company in the sum of $10,416.67 on which the Biscayne Company obtained a judgment at law against the Ostend Company in April, 1928, in the sum of $13,593.94. The execution issuing upon the judgment was returned *nulla bona*, and in April, 1929, the complainant exhibited its creditors' bill against the Ostend Company and others, as stated, in the Circuit Court for Dade County. The bill attacks the conveyances from the Ostend Realty Company to Mrs. Bonnie M. Busch, Clarence M. Busch and by them to Miss Eleanor R. Shutt, The Presbyterian Church, and by Miss Shutt to Busch and his wife. There are four tracts of land involved which for convenience may be referred to as Parcels No. 1, 2, 3 and 4. The allegations necessary to sustain a creditors' bill are duly made.

The answer of the Presbyterian Church relates to Parcel No. 4, and contained the averment that the conveyance was made by Busch and his wife for a church site. There seems to be no controversy affecting the lands covered by this conveyance.

The separate answers of Clarence M. Busch and his wife Bonnie M. Busch present the controversy around which this litigation moves. The Ostend Realty Company also answered the bill. The answer was signed in the name of the Company by Clarence M. Busch as its President. As to Parcel No. 1 it is averred that the title was conveyed to the Company in December, 1925, by Clarence Busch and his wife

solely for the purpose of immediate reconveyance to Mrs. Busch, which was done on the same day. It is averred that the Company never had any interest in the land and there was no fraud in the transaction.

As to Parcel No. 2 it is averred that the Ostend Company transferred the land to Clarence M. Busch subject to four existing mortgages aggregating $40,000.00 and that one of them secured the indebtedness of the Company to J. R. Shelton in the sum of $2,633.21 and that the conveyance was made in consideration of Busch assuming the mortgage indebtedness of the Company to Shelton which has been paid and a large part of the remaining indebtedness has been discharged by Busch.

As to Parcel No. 3, the answer avers that the, Ostend Realty Company purchased the land in that parcel from Biscayne Realty Company, a copartnership, and conveyed the same to Clarence M. Busch; that the land was purchased by the Ostend Realty Company subject to three mortgages securing the indebtedness aggregating $21,250.00, that part of the consideration was a sum of money agreed to by the Ostend Company to be paid to the Biscayne Realty & Insurance Company amounting to $10,416.67 and that debt was evidenced by the promissory note of the Ostend Company, the payment of which was secured by the mortgage executed by the Ostend Company in favor of the Biscayne Realty and Insurance Company—that mortgage is the one held by the complainant in this cause—that Clarence M. Busch assumed the payment of all four mortgages; that the conveyance to him was in good faith and not fraudulent, and that Busch has made substantial payments upon the first three mortgages.

As to Parcel No. 4, it is averred that the same was acquired from John McAulay, Jr., and wife; that the Company

assumed the payment of mortgages to secure debts aggregating sixty-five thousand dollars to Clara A. Lybyer, Albert Lybyer and Rebecca Mitchell, in addition thereto the Company gave its note to J. A. McAulay, Jr., in the sum of $16,193.93 and executed its mortgage upon the land to secure the payment of the same. It is further averred that in this transaction the Ostend Company was acting for Mrs. Bonnie M. Busch; that that part of the purchase price paid to McAulay was paid by her; that the Company had no interest in it and that it merely held the title temporarily until some irregularities in it could be corrected, and that the Company transferred the title to Mrs Busch in April, 1926; that Mrs. Busch had paid all the indebtedness due to McAuley and paid all of that due to Rebecca Mitchell.

The answers of Clarence M. Busch and Mrs. Bonnie M. Busch set up substantially the same matters, Mrs. Busch's answer dealing only with Parcels No. 1 and 4 and disclaiming any knowledge as to Parcels No. 2 and 3. Mr. Busch's answer admitted that the Ostend Company owned Parcels No. 2 and 3, but denied that it ever owned Parcels No. 1 and 4. The answer denies any fraud in the transactions as to any of the parcels and that the conveyance to him of Parcel No. 2 was free of any fraud and that he paid a valuable consideration therefor.

Eleanor R. Shutt's connection with the transactions relates to Parcel No. 2 conveyed to her by Busch and wife.

The evidence tends to establish the fact that prior to the transactions mentioned above the Ostend Realty Company had ceased to engage in any business, that it had disposed of all its property and divided its assets among its stockholders; that in 1925 the defendant Clarence M. Busch used the name of the Corporation as a matter of convenience in the transaction above mentioned and that all the money used for them

was furnished by him and his wife and the Ostend Corporation had no financial interest in the lands but was used at will by Busch, who was practically sole owner of all the stock of the Company and its nominal president, as the conduit through which passed the title to the lands either to Busch, or his wife, accordingly as he desired the title to vest.

This was true as to Parcel No. 3 as well as to the other parcels. The answer of Clarence M. Busch as to Parcel No. 3 avers that the title to that tract while taken in the name of the Company was afterwards transferred to him in consideration of the assumption by him of the mortgages which the Company had assumed and the mortgage executed by it to secure the remainder of the purchase price in the sum of $10,416.67 to the complainant.

Upon the coming in of the master's report of the evidence and findings of fact and law, the complainant, in February, 1931, by motion asked leave to file a supplemental bill which was granted and the supplemental bill was filed. The prayer of the bill was that the promissory note of the Ostend Realty Company, which formed the basis of the judgment of the complainant against that Company mentioned in the original bill be decreed to be in fact the obligation of Clarence M. Busch as an individual and that the Ostend Realty Company was but the double or *"alter ego"* of the defendant Clarence M. Busch and that the judgment be decreed to be in fact and effect a judgment against Clarence M. Busch as an individual, as well as a judgment against the Corporation, and that the said Busch be held to be personally liable thereon.

Demurrers by the Ostend Realty Company, Clarence M. Busch and Bonnie M. Busch were sustained and the final decree entered dismissing the bill of complaint. To that decree the appeal was taken.

The supplemental bill was well founded. It was based upon the facts revealed by the evidence taken before the master, which disclosed the true character of all the transactions relating to the four parcels of land described in the bill. It is clear that Clarence M. Busch was merely the nominal president of a corporation which had ceased to transact business, disposed of its assets, divided between the stockholders, and for all purposes of its organization had become at least dormant, if not defunct; that in all the transactions the defendant Clarence M. Busch, the nominal president, possessor of all the corporate records and practically sole stockholder, merely used the corporate name as a trade name, as a mere nominal conduit through which he caused the title to pass to the persons named, including himself, as he desired; that in the transactions he used indiscriminately his own money and that of his wife, which it appears was not kept separately from his own. Such is the fact not only as to Parcel No. 3 upon which the complainant holds a mortgage to secure the note of the Ostend Company to the complainant but as to all other tracts. Whatever cash payments were made to the grantors respectively were made by Clarence M. Busch from the moneys in his hands consisting of his own and his wife's. The mortgages assumed by the parties to whom the title passed through the Ostend Company as nominal conduit were in the last analysis but obligations incurred and assumed and paid by the grantee to whom the title passed from the Ostend Company.

The function of a supplemental bill is to supply some imperfection or mistake in the original bill, or to bring before the court facts which had occurred or at least been discovered since the filing of the original bill and affecting the rights of the parties or the subject of the controversy. It may be resorted to where an amendment is not available.

It must appear that the facts relied upon as supplemental have arisen since the commencement of the original suit or that the facts have first come to the complainant's knowledge or been made known to him in such manner or at such time that an amendment would not be available. Such a bill is applicable to cases where the same parties or the same interests remain before the court. It is merely ancillary to the original pleading. The facts set up must be material and germane to the cause set out in the original. See Rio Grand Dam & Irrigation Co. v. United States, 215 U. S. 226, 54 L. Ed. 190, 30 Sup. Ct. Rep. 97; 24 Standard Ency. Proc. 528; Story's Eq. Pl. 332; Beach v. Reynolds, 64 Bark. (N. Y.) 506; 21 C. J. 540; Owens v. Love, 9 Fla. 325; Ledwith v. City of Jacksonville, 32 Fla. 1, 13 South. Rep. 454; State v. Black River Phosphate Co., 32 Fla. 82, text 128, 13 South. Rep. 640:

No new justiciable controversy involving issues wholly distinct from and material to the subject matter of the original bill and not in aid of it was presented by the supplemental bill, but such matters only if they had been known to the complainant might have been incorporated in the original bill. The subject of the supplemental bill was the real character of the transactions between the parties in which it was disclosed that the defendant Clarence M. Busch merely traded in another name, that through them all ran his primary and ultimate liability. It was not exactly the case of an undisclosed principal, but more analogous to that of one doing business under a trade name.

The object of the original bill was to subject certain property consisting of lands to an indebtedness which in reality and in law was the indebtedness of Clarence M. Busch, although it appeared to be in name of a corporation

of another State and which ceased its operations as such, disposed of its assets, and to all intents and purposes was defunct, the name being used by the nominal president and owner of practically all its stock. The pleadings interposed by the Ostend Realty Company and Clarence M. Busch in so far as they relate to Parcel No. 3 are susceptible to the construction that the transaction in which the land was acquired and out of which the indebtedness to the complainant grew was conducted by the defendant Clarence M. Busch in his own behalf and for his sole benefit. So it is contended that the facts alleged in the supplemental bill justify a disregard of the corporate entity of Ostend Realty Company and compel a recognition of the liability of Clarence M. Busch on the judgment.

In these circumstances has equity the power to treat the judgment obtained in name against the Ostend Realty Company as a judgment obtained against Clarence M. Busch as it has the power to disregard the corporate name and treat the acquisition of property acquired in its name as in reality the property of Clarence M. Busch?

In Morawetz on Private Corporations, Volume 1, Sec. 1, the author in discussing corporation as a separate or distinct entity says: "In most cases this is a just as well as convenient means of working out the rights of the real persons interested; however, it is essential to a clear understanding of many important branches of the law of corporations to bear in mind distinctly, that the existence of a corporation independently of its shareholders is a fiction; and that the rights and duties of an incorporated association are in reality the rights and duties of the persons who compose it, and not of an imaginary being." Further on in that excellent work, at Section 227, the author says: "In equity the conception of a corporate entity is used merely

as a formula for working out the rights and equities of
the real parties in interest; while at law this figurative
conception takes the shape of a dogma, and is often applied
rigorously, without regard to its true purpose and meaning.
In equity the relationship between the shareholders is recog-
nized whenever this becomes necessary to the attainment
of justice."

Many cases are in line with the views expressed above,
where the corporate entity was disregarded and the persons
composing it were treated in equity as the real persons in
interest and liable for the obligation which they created in
the corporate name. See Hoffman Steam Coal Co. v.
Cumberland Coal & Iron Co., 16 Md. 456, 77 Am. Dec. 311;
Potts v. Schumucker, 84 Md. 535, 36 Atl. Rep. 592, 35 L.
R. A. 392; Franklin Min. Co. v. O'Brien, 22 Col. 129, 43
Pac. Rep. 1016; Buffalo Loan, Trust & Safe Deposit Co. v.
Midina Gas & Electric Light Co., 12 App. Div. 199, 42
N. Y. Sup. 781; First Nat. Bank of Chicago, v. Trevian
Co., 59 Ohio State, 316, 52 N. E. Rep. 834; Donovan v.
Purtell, 215 Ill. 629, 75 N. E. Rep. 334, 1 L. R. A. (N. S.)
176; State of Ohio ex rel. Watson v. Standard Oil Co.,
49 Ohio St. 137, 30 N. E. Rep. 279, 15 L. R. A. 145.

In the latter case the State commenced its action to oust
the defendant of the right to be a corporation on the ground
that its stockholders by their activities had bound the cor-
poration to an agreement that was against the public policy.
The court said that so long as a proper use is made of the
fiction that a corporation is an entity apart from its share-
holders, it is harmless, and, because, convenient, should not
be called in question; but where it is urged to an end sub-
versive of its policy, or such is the issue, the fiction must be
ignored, and the question determined whether the act in
question, though done by the shareholders was done simply

as individuals with respect to their individual interests as shareholders, or was done ostensibly as such, but, as a matter of fact, to control the corporation, and affect the transaction of its business, in the same manner as if the act had been clothed with all the formalities of a corporate act. This must be so, said the court, because the stockholders have a dual capacity, and are capable of acting in either, and a possible interest to conceal their character when acting in their corporate capacity, the absence of the formal evidence of the character of the act cannot preclude judicial inquiry on the subject. If it were otherwise, then in one department of the law fraud would enjoy an immunity awarded to it in no other.

The converse of that proposition is also true. If the stockholders of a corporation enter into a transaction in their individual and private interests, and utilize the name of the corporation merely as a convenience for the completion of the transaction, where the legal entity as such has no interest in the matter but the name is used to mislead creditors or perpetrate a fraud upon them, the legal entity in the name of which the transaction was carried will be ignored and the parties held to individual liability. See 14 C. J. 61, Sec. 22.

This doctrine is but the logical sequence of the principle that a corporation cannot be formed for the purpose of accomplishing a fraud, or other illegal act, under the guise of the fiction that a corporation is a legal entity separate and distinct from its members. When this is attempted the fiction will be disregarded by the courts and the acts of the real parties dealt with as though no corporation had been formed. Clark and Marshall Private Corporations Sec. 7 a.; Donovan v. Purtell, *supra*.

The facts in the Donovan case reduced to their last analysis were, as stated by the Court to be, as follows: "The papers thus prepared were really the papers of the appellant (Donovan), though nominally those of a corporation in his office and under his control" (text 636). The action was one of assumpsit brought by Miss Purtell against Donovan. In the course of the opinion the court announced and followed the following doctrines: "The directors of a private corporation have no right under any circumstances to use their official position for their own individual benefit" (text 639); the modern doctrine confines the fiction of the corporate entity to the "purpose for which it was adopted" (text 639); the corporate entity doctrine has been "repudiated" in all cases where it has been insisted on as a protection to fraud, or any other illegal transaction;" " 'If bank directors do not manage the affairs and business of the bank according to the directions of the charter and in good faith, they will be liable to make good all losses, which their misconduct may inflict upon either stockholders or creditors, or both. * * * (and) They may be held to account * * * in a court of chancery, or they or any of their number, who shared in the wrongdoing, may be sued at law for damages.' " (text 640); "In an action at law for damages, the fact that a defendant acted throughout in the capacity of agent, in a fraud perpetrated by him, will afford him no excuse" (text 640-641); "An action for money had and received will lie whenever one person has received money which, in justice, belongs to another, and which, in justice and right, should be returned." "When money has been thus received, the law implies a promise to pay, notwithstanding there was no privity between the parties" (text 642).

Equity always has jurisdiction of fraud, misrepresenta-

tion and concealment, and it does not depend on discovery. Jones v. Bolles, 9 Wall, 364, 19 L. Ed. 734.

See Given v. Times-Republican Printing Co., 114 Fed. 92, 52 C. C. A. 40, for a clear statement of the doctrine of estoppel as applied to circumstances analogous to those in the present case.

Will the Ostend Realty Company be heard to say that property which is acquired ostensibly in its own name and upon its own responsibility is in fact the property of Busch, or his wife, for whose sole benefit and individual profit in reality the property was acquired; the name of the company being used only as the *alter ego* of Busch, or his wife, as cash transactions required, which fact was concealed by the Ostend Company from its creditors? Is not that question presented by the original bill? If so why should not the court determine it and settle the equities between the parties, Busch and his wife being parties? The supplemental bill in reality presents no other question. If the court should determine the question, the matter of the judgment against the Ostend Realty Company whether it is in fact a judgment against Busch upon whom process was served as President of the Ostend Company presumably becomes immaterial.

In order to obtain the relief sought by the original bill it would be unnecessary for the court to transfer the judgment liability to Busch. The supplemental bill therefore merely suggests another method of arriving at the same result, namely: that of subjecting the property to the payment of the judgment whether the latter be regarded as the liability of the corporation nominally or of Busch in reality.

The original and supplemental bills considered together present the question whether the Ostend Realty Company was not in fact and in law in the circumstances developed

by the pleadings and the evidence merely Clarence M. Busch and Bonnie M. Busch, his wife, under another name. See In re Muncie Pulp Co., 139 Fed. 546, 7 C. C. A. 530, where the court rejected the claim that an agent can acquire title to property adverse to his principal. There is ample ground in the pleadings and evidence for the assertion that Clarence M. Busch used the Ostend Realty Company as his ostensible principal, acting in his capacity as President of the Corporation as its agent, and now in his individual capacity asserts a title to the property adverse to that of his ostensible principal to the detriment of the latter's creditors.

In the case of J. J. McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. Rep. 386, 54 L. Ed. 590, the principle was recognized that the courts will look beyond the corporate form to the purpose of it and to the officers who are identified with that purpose. There is no difference in substance between organizing a corporation to serve in certain transactions the individual purpose of the incorporators, and using the name of a defunct corporation to serve the same end. See also Martin v. D. B. Martin Co., 10 Del. Ch. 211, 88 Atl. Rep. 612; Bennett v. Minott, 29 Or. 339, 39 Pac. Rep. 997; Roberts v. W. H. Hughes Co., 86 Vt. 76, 83 Atl. Rep. 807.

In Potts v. Schumucker, *supra,* the court recognized the doctrine that in the furtherance of the ends of justice the debtor corporation and the individual owning all its stock and assets will be regarded as identical. This doctrine, while not generally approved, thus broadly stated, nevertheless a qualification exists that when the corporation, that is to say its name, is used to conceal the assets of the individual, or to hinder and delay his creditors in the collection of their debts the sole owner and the corporation will be regarded as identical. In re Rieger, Kanner Altmark, 157

Fed. Rep. 609; Kellogg v. Douglas Co. Bank, 58 Kan. 43, 48 Pac. Rep. 587, 62 Am. St. Rep. 596.

In the view we have of the case it is unnecessary to say that the Ostend Realty Company was organized for an illegal purpose, nor to say that the ownership of all its stock by Clarence M. Busch dissolved it. That is not necessary to a determination of the case. It is sufficient to say that the original bill, the answers thereto, and the evidence disclose a state of facts, at least suggest such facts, as would require a court of equity to look beyond the mere form of the corporate entity to the person who was the sole beneficiary of its activities, directed and managed the transactions, used the corporate name at his pleasure, incurred financial obligations in its name, conveyed to himself the corporate lands when he so desired, received all money paid to the corporation by way of consideration in its transactions, if any, assumed obligations primarily assumed in the corporate name which were originally intended to be taken over by him, used the name of the corporation and set it up as his principal, assumed the act as its agent when in fact the act in the corporate name was his act, and his act that of the Corporation. In the circumstances the interests of the two cannot be distinguished. In these transactions the Corporation by name became indebted to third persons. It was the *alter ego* of the defendant Busch.

The supplemental bill set this situation up more clearly. Its allegations rested upon disclosures made by the testimony. The relief sought is identical with that sought by the original bill in that it seeks to subject lands to the payment of the debt of a creditor misled and hindered in the collection of its debt by the activities of the defendant Busch and the means be adopted to avoid responsibility

for the transactions begun and completed in his own interest.

We were also of the opinion that the extent to which any of the property involved in the transaction may be definitely set apart and be held exempt from the claims of the creditors of Mr. Busch will depend upon the clearness of the evidence by which Mr. Busch or Mrs. Busch may establish the fact that a definite amount of her separate money went into the purchase of any one tract or parcel of land or more.

We think the demurrer to the supplemental bill should have been overruled, that the decree was erroneous and should be reversed with instructions to the Chancellor to proceed in the cause in accordance with the views expressed in this opinion and recommit the case to a master if deemed necessary for the taking of more evidence to the extent at least of Mrs. Busch's interest as represented by the lands in which any definite or certain amount of her separate funds were invested.

It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., not participating.