J. FRANK ULRICH, et ux., v. MARGARET REINEKING, et vir, EDGEWOOD LUMBER Co., INC., and M. V. SMITH.

198 So. 74

En Banc

Opinion Filed September 24, 1940

Rehearing Denied October 30, 1940

George M. Powell, for Appellants;

Baker & Baker and Martin Sack, for Appellees, Margaret Reineking and John Reineking, her husband, and Edgewood Lumber Co., Inc., and Otto H. Wittschen, for Appellee M. V. Smith.

PER CURIAM.—This cause having heretofore been submitted to the Court upon the transcript of the record of the final decree, and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said final decree; it is therefore, considered, ordered and adjudged by the Court that the said final decree of the circuit court be, and the same is hereby affirmed.

Affirmed.

TERRELL, C. J., WHITFIELD, BROWN and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.

CHAPMAN, J. (dissenting).—From an order dismissing a bill of complaint praying for specific performance of a contract, and the entry of a final decree finding the equities of the cause in favor of the defendant, Edgewood Lumber Co., Inc., on its counter claim against J. Frank Ulrich and wife, Ruth F. Ulrich, and M. V. Smith, declaring a lien on cer-

tain lands situated in Duval County, Florida, in the approximate sum of $4,934.30, made and entered by the Circuit Court of Duval County, Florida, an appeal has been perfected therefrom to this Court.

The record discloses that the appellants owned building lots located near Mandarin and were desirous of building a home thereon. Margaret Reineking and husband, John Reineking, defendants, became interested in the purchase of a lot adjacent to the lot owned by the appellants as a building site. M. V. Smith, another defendant, was a building contractor associated with the defendant Edgewood Lumber Co., Inc., of which John Reineking was an executive officer and vice president.

The Reinekings inspected the lot and agreed to purchase the same for the sum of $3500.00 and to begin the erection or construction of a building on said lot within thirty days thereafter. The agreed purchase price of the lot in the sum of $3500.00 was to be made in the form of credits with the Edgewood Lumber Co., Inc., which was to furnish the materials going into the appellants' home. The credits were for $2,000.00 immediately and $1,500.00 at a subsequent date. The letters signed by the Reinekings are viz.:

"Jacksonville, Florida.

"Edgewood Lumber Company
Jacksonville, Florida

Gentlemen:

"You are hereby authorized and directed to deliver at your regular retail list price building materials to the extent of Two Thousand Dollars ($2000.00) to J. Frank Ulrich and Ruth F. Ulrich, his wife, to be used in the construction of the improvements on Lot Nine (9), First Addition to Beau-

clerc Wood, Duval County, Florida, to be charged to my account.

Dated at Jacksonville, Florida, this 12th day of May, A. D. 1937.

"MARGARET REINEKING

"By John Reineking, her Attorney-in-fact."

"Jacksonville, Florida.

"Mr. J. Frank Ulrich,

"Mrs. Ruth F. Ulrich,

"We hereby agree upon demand by you to furnish to you or your assigns building materials to the value of Fifteen Hundred Dollars ($1500.00) at the regular retail list price of Edgewood Lumber Company to be used in the construction of any building in the City of Jacksonville, Florida, or within 12 mi thereof other than Lot Nine (9), First Addition to Beauclerc Wood, Duval County, Florida; provided, however, that the person to whom said materials are furnished shall agree to purchase all building materials at said regular retail list price for the proposed improvements from Edgewood Lumber Co., Inc.

"Dated and signed at Jacksonville, Florida, this 12th day of May, A. D. 1937.

"MARGARET REINEKING

"By John Reineking, her Attorney-in-Fact."

The appellants immediately thereafter employed an architect and building plans and specifications were worked out and agreed upon, when the appellants entered into a contract with M. V. Smith to build or construct the house according to the plans and specifications, and to purchase the materials from the Edgewood Lumber Co., Inc. The Edgewood Lumber Co., Inc., through the defendant Smith, supplied the materials going into the appellants' house in

the sum of $4,160.30, but declined to allow a credit thereon for the agreed price of the lot in the sum of $3500.00.

It is inferable from a study of the record that the Reinekings and the Ulrichs had the same architect, as this group consulted an attorney on the construction of the two houses, and the Reinekings offered as a reason for not beginning the construction of their home that some detail had to be worked out with the architect. After the Ulrich's house was in process of construction, the Reinekings and the Edgewood Lumber Co., Inc., of which Mr. Reineking was the executive officer and vice president, repudiated the agreement to buy the lot and refused to supply letters of credit, when Edgewood Lumber Co., Inc., filed a notice of lien on the property of the appellants to whom it had furnished building materials. The appellants tendered to the Reinekings a form deed for approval and agreed to sign the same conveying the lot to the Reinekings according to their agreement and insisted upon a performance of the agreement, and upon the refusal of the Reinekings so to do, the appellants filed a bill of complaint praying for the specific performance thereof.

The lower court sustained a motion to strike portions of the bill of complaint, viz.:

"4.—Complainants further allege that the said defendants, Margaret Reineking and John Reineking, her husband, and the said Edgewood Lumber Co., Inc., have combined, conspired, confederated and agreed together and amongst themselves, and with divers other persons to the complainants unknown, to repudiate, violate and refuse to be bound by or perform their said agreement, and to cause to the said complainants the wrongs and injuries herein described and alleged, and that to accomplish the said object of the said alleged conspiracy have done and/or refused to do

the matters and things herein alleged and complained of, and that they and each of them threaten to persist in and continue their said wrongs and injuries to the said complainant as aforesaid. * * *

"6.—* * * and thereby the sale and development of the other property of the said complainants in said vicinity has been retarded and prevented, to the manifest wrong and injury of the complainants.

"7.—* * *, and to commence forthwith and with all convenient speed to build the said house upon the said Lot Thirteen (13), and to complete the same; and that if during the progress of this proceeding, it should appear that the said agreement, or any part thereof, is unenforceable, or not susceptible to specific enforcement, that then and in that case that complainants are entitled to have the damages suffered by said complainants as a result of such repudiation and refusal to perform of the said defendants as aforesaid ascertained by this Court and a money decree for the amount of said damages and interest awarded to these complainants, and execution therefor.

"8.—Complainants further allege that in the event it should be claimed or should appear that the said Margaret Reineking is not a free dealer or not competent to contract, as she had been held out and represented to be by the said defendants, John Reineking, and said Edgewood Lumber Co., Inc., and by herself—which representation complainants believed, and upon which holding out and representation complainants relied—that then and in that case, complainants are entitled to a decree herein that the liability of the said Margaret Reineking under the said agreement be imposed upon and decreed against the said John Reineking and/or the said Edgewood Lumber Co., Inc., or both of them, as this Honorable Court shall find from the evidence herein. * * *, and that in the event that specific perform-

ance as to all or any part of the said agreement, or as to either of the parties thereto is impracticable, that then and in that event that these defendants be granted a decree for such damages as they are found to be entitled to on account of the failure or refusal of the said defendants or either of them to well, truly and promptly perform their said agreement."

The appellants, on August 15, 1938, filed their reply to the counterclaim of the Edgewood Lumber Co., Inc., and the lower court sustained a motion of the Edgewood Lumber Co., Inc., to strike a portion of the appellants' reply to the counterclaim of the Edgewood Lumber Co., Inc. The portion stricken is viz.:

"7.—Said plaintiffs by way of counterclaim here repeat and reallege each and every of the allegations of their said bill of complaint as originally set forth therein and as last amended, and also each and every the foregoing allegations of this their reply, and say that the said defendants, Edgewood Lumber Company, Inc., and the said Margaret Reineking and John Reineking, her husband, have severally become and are indebted to the said plaintiffs in a large sum of money, to-wit, Five Thousand Dollars ($5,000.00), for the failure and refusal of the said defendants to carry out and perform their said contract and agreement as herein and in said bill of complaint as originally existing and as last amended alleged and set forth, which sum these plaintiffs are willing to set off against the claim of the said defendant Edgewood Lumber Company, Inc., and said plaintiffs hereby demand a decree against the said defendants, and each of them, for any excess over and above any amount that may be found to be due to the said defendant, Edgewood Lumber Company, Inc., herein, and an execution thereon."

Counsel for appellants contend that the answer of the Edgewood Lumber Co., Inc., contained a counterclaim praying for affirmative relief, viz.: a judgment or decree against the plaintiffs in the sum of $4,162.30, with interest, and that said sum be declared a first lien on the home of the plaintiffs, and that said property be sold to satisfy the said decree; also, that plaintiffs, under the provisions of Section 37, Chancery Act, viz.: "If the answer include a counterclaim with a prayer for affirmative relief, each party against whom it is asserted shall file his *reply* thereto within the time prescribed by law. The *reply* shall state the facts relied upon in the answer to such counterclaim." (emphasis supplied) had a lawful right to file paragraph 7, *supra,* and should not have been stricken by the lower court in its order dated November 30, 1938.

The *reply* of a plaintiff to the counterclaim of a defendant provided for in the quoted provision of Section 37, *supra,* contemplates a pleading containing sufficient legal substance and drafted in such form that the issues can or may be by the trial court easily appreciated and determined. While paragraph 7 of the reply of the plaintiffs to the counterclaim of the Edgewood Lumber Co., Inc., stricken by the lower court is not a model pleading, at the same time it cannot be said that the lower court was legally justified in striking the same.

It is settled law in Florida that the enforcement of specific performance of a contract is not a matter of right, or of course, but the enforcement thereof rests in the sound judicial discretion of the court, controlled by acknowledged principles of equitable jurisprudence. See Speisberger v. Newman Realty Co., 125 Fla. 342, 169 So. 859; Scott v. City of Venice, 123 Fla. 772, 167 So. 654; Trimble v. Hart, 130 Fla. 396, 177 So. 710. The plaintiff must be willing, ready and able to perform the terms of

the contract sought to be enforced. See Tate v. Pensacola, Gulf, Land & Dev. Co., 37 Fla. 439, 20 So. 542, 53 Am. St. Rep. 251.

Counsel for appellees assert that a married woman under disabilities of coverture cannot be compelled to perform an executory contract for the purchase of land in a suit for specific performance. The authorities cited are: Fisher v. Parker, 93 Fla. 258, 112 So. 62; Holder v. West Florida Dev. & Ins. Co., 103 Fla. 487, 137 So. 691; Griffing v. Griffing, 120 Fla. 913, 163 So. 141. We fully agree with this contention and the law as enunciated in these cases. The law is settled that a parol agreement to convey land cannot be enforced in equity unless there has been part performance by the purchaser. See Williams v. Bailey, 69 Fla. 225, 67 So. 877; Clark & Lewis v. Gardner, 91 Fla. 1059, 109 So. 192.

It will be observed that the appellants here were deprived of the right and privilege of establishing by competent testimony a conspiracy on the part of the Reinekings and the Edgewood Lumber Co., Inc., to do an unlawful act, viz.: to repudiate, violate and refuse to be bound by or perform their lawful agreement and thereby obligate the appellants for the purchase price of materials with the Edgewood Lumber Co., Inc., with which to build or construct their said home, on the pretext that the credit with the Edgewood Lumber Co., Inc., could be so used and the deed to the Reinekings would pay for the materials. The record shows that a considerable account for materials with the Edgewood Lumber Co., Inc., had been incurred by the appellants before they were advised that their credit for the value of the purchase price of the lot would not be allowed.

It is beyond question that testimony to be offered in support of the stricken portions of the bill of complaint, *supra*, would not only be material but would go to the merits of

the controversy existing between the parties, and if a conspiracy is established on the part of the defendants to do an unlawful act, it cannot be overlooked that the Reinekings and the Edgewood Lumber Co., Inc., are in a court of equity and should be there only with clean hands.   John Reineking, the husband of Margaret Reineking, signed the letters, *supra,* as attorney in fact for his said wife.   The said John Reineking was an executive and vice president of the Edgewood Lumber Co., Inc., he went with his wife to inspect the lot before the trade was closed; his name appears on the letters to the Ulrichs and to the Edgewood Lumber Co., Inc., and he appeared in the attorney's office; and, while it is not clear about his appearance at the architect's office, a sketch of his proposed house now appears in the files.

In the case of Biscayne Realty & Insurance Co. v. Ostend Realty Co., 109 Fla. 1, 148 So. 560, this Court held that in equity the conception of a corporate entity is used merely as a formula for working out the rights and equities of the real parties in interest; a corporation cannot be formed for the purpose of accomplishing a fraud, or other illegal act, under the guise of the fiction that a corporation is a legal entity separate and distinct from its members.   When fraud or illegal acts are shown on the part of a corporation, the courts of equity will disregard the corporate fictions and consider the real parties as though no corporation existed.

The law appears to be settled that an agent will be personally liable where he professes to enter into a contract for a principal who is at the time non-existent, or legally incompetent or irresponsible, even though he enters into the contract in good faith.   The law requires such agent to make a contract binding upon some principal or else he himself is liable.   See 2 C. J. 808-809, par. 481.

The husband at the common law will be personally liable for contracts he entered into as the purported agent of his wife, under the doctrine that an agent is personally liable when he contracts for a legally incapacitated or irresponsible principal. See 30 C. J. 584, par. 115.

I think the decree of the lower court should be reversed.

BUFORD, J., concurs.