242 So.2d 185 (1970)
ST. PETERSBURG SHERATON CORPORATION, and International Telephone & Telegraph Corporation, Delaware Corporations, Appellants,
v.
Laura H. STUART and P. Frank Stuart, Her Husband, Appellees.
No. 69-249.
District Court of Appeal of Florida, Second District.
November 18, 1970.
Rehearing Denied January 13, 1971.
*187 John T. Allen, Jr., of Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, for St. Petersburg Sheraton Corp.
J.A. McClain, Jr., of McClain, Turbiville & Heller, Tampa, for International Tel. & Tel. Corp.
H. Rex Owen, of Bussey, Simmons & Owen, St. Petersburg, for appellees.
PIERCE, Acting Chief Judge.
Appellants St. Petersburg Sheraton Corporation (St. Petersburg Sheraton) and International Telephone and Telegraph Corporation (I.T. & T.), defendants below, bring for review a judgment awarding appellees Mr. and Mrs. Stuart, plaintiffs below, $10,000.00 compensatory damages and $10,000.00 punitive damages. Appellants also filed their petition here to review judgment for costs.
Mr. and Mrs. Stuart attended a banquet on December 15, 1966, at the Sheraton Inn in St. Petersburg where the dessert was cherries jubilee[1]. The headwaiter, one Carmellini, prepared the dessert, about twelve or fifteen feet from Mrs. Stuart, for about thirty-five people in the presence of the guests. After the cherries had been initially ignited, Mr. Carmellini several times added the Flambe, composed of alcohol, brandy, fruit juices and other citrus oils. About the ninth time he added it the flame flashed back, sending a stream of flaming Flambe onto Mrs. Stuart from which she received first degree burns.
The Stuarts filed suit against St. Petersburg Sheraton and later the Court granted their motion to make I.T. & T. a party on the ground that St. Petersburg Sheraton was the alter ego of I.T. & T. They did not sue Sheraton Corporation of America (Sheraton America), the parent of St. Petersburg Sheraton which they claimed was merely an instrumentality and adjunct of the parent. They alleged that Sheraton America was merged into and became a part of I.T. & T., which acquired all the assets of Sheraton America, and that I.T. & T. thereby became and was chargeable with the liabilities of Sheraton America.
Appellants contend that the Court erred in permitting the issue of punitive damages to be submitted to the jury, arguing that the facts presented in this case were not sufficient to show a legal basis for such damages. We agree.
In Dr. P. Phillips & Sons v. Kilgore, Fla. 1943, 152 Fla. 578, 12 So.2d 465, our Supreme Court said:
"It is in the province of the trial court to determine as a matter of law whether or not there is a basis for punitive damages and instruct the jury accordingly. *188 Whether or not the elements are present to warrant it is for the jury in the light of all the facts of the case."
See also Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214; Doral Country Club, Inc. v. Lindgren Plumbing Company, Inc., Fla.App. 1965, 175 So.2d 570; Webb's City, Inc. v. Hancur, Fla.App. 1962, 144 So.2d 319.
This Court said, in the case of Sauer v. Sauer, Fla.App. 1961, 128 So.2d 761:
"The character or degree of negligence necessary to sustain an award of punitive damages must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety, welfare, and rights of others which is equivalent to an intentional violation of them. Carraway v. Revell, Fla. 1959, 116 So.2d 16. The court in the Revell case also noted that the character of negligence necessary to sustain a conviction for manslaughter is the same as required to sustain a recovery for punitive damages with the distinction of course being the degree of proof."
See Rodriguez v. Gonzalez, Fla.App. 1963, 157 So.2d 848; Carter v. Lake Wales Hospital Association, Fla.App. 1968, 213 So.2d 898. And in Dr. P. Phillips & Sons, supra, the Court said that the allowance of punitive damages depends on malice, moral turpitude, wantonness, or the outrageousness of the tort.
The testimony taken in the light most favorable to the Stuarts shows that Carmellini poured Flambe on the cherries while the fire was flaming, causing the flame to shoot out and burn Mrs. Stuart; that Carmellini was an experienced chef and knew that fire is dangerous and that Flambe is highly flammable; that he "appeared" to be intoxicated and that his behavior was "erratic".
It is uncontradicted, however, that Carmellini could not see any fire in the pan on the night of the accident; that he thought the flame was out, but apparently there was a "little bit of flame that caught the liquid coming out of the bottle". Carmellini, with thirty-five years' experience as a chef, estimated that he had prepared such flaming dishes over five hundred times in the same manner as on the night of the accident, and had never had an accident before. Can it be said that in mixing the jubilee the danger of injuring one of the guests was imminent, clear and present? Carraway, supra. Or that the negligence shows a grossly careless disregard of the safety, welfare and rights of others which is equivalent to an intentional violation of them? Sauer, supra; Rodriguez, supra.
The Stuarts produced evidence that Carmellini "appeared" to be intoxicated to show that one so exhilarated is likely to be abnormally reckless. But this evidence, if admissible, was merely speculative. The witnesses did not see him take a drink, observe his eyes or his walk, or smell any liquor on him. Such evidence cannot make an act wanton and reckless that was not otherwise so. Smith v. State, Fla. 1953, 65 So.2d 303; Jackson v. State, Fla.App. 1958, 100 So.2d 839.
The Stuarts cite Atlas Properties, Inc. v. Didich, Fla.App. 1968, 213 So.2d 278, and Griffith v. Shamrock Village, Fla. 1957, 94 So.2d 854, but the circumstances in these cases are so different from those in the case sub judice that they cannot be controlling. Here, it was no violation of law for Carmellini to prepare cherries jubilee. He had never had this type accident before, as opposed to repeated warnings to the operator of the pool in Didich, and there was no death involved in this case. In Griffith, the Court found that under the circumstances in that case the jury could have imputed malice to the defendant from the entire want of care or *189 a want of slight care or attention by the defendant to the duty it had assumed toward the plaintiff.
We hold that there was no showing of negligence of so gross a character as to warrant the infliction of punitive damages, and therefore the Court erred in submitting that question to the jury.
Appellants contend that the lower Court erred in admitting into evidence portions of Florida Hotel and Restaurant Commission Regulations and Fire Marshal's Regulations, which the Stuarts claim had been violated in the preparation of the cherries jubilee. Without passing on the admissibility of these regulations, we think such error, if any, was harmless. Sheraton admitted in its brief that it is folly to argue that the jury could not have found Carmellini guilty of simple negligence in the case. The trial Judge did not instruct the jury that a violation of these regulations would justify the award of punitive damages. His instruction on the subject was:
"Violation of the regulations prescribed by a Florida administrative agency is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that a person alleged to have been negligent violated such a regulation, you may consider that fact, together with the other facts and circumstances, in determining whether such person was negligent."
Turning now to the question of whether or not I.T. & T., by merger or otherwise, assumed or became liable for the obligations of the dissolved Sheraton America, we hold that the evidence produced by the Stuarts fell short of proving that there was a merger between I.T. & T. and Sheraton America.
The documents introduced in evidence reveal that almost a year after the accident I.T. & T. entered into an agreement with Sheraton America, a New Jersey corporation, whereby I.T. & T. or a subsidiary was to receive all the stock of Sheraton America in exchange for a proportionate amount of I.T. & T. stock. Sherwin Corporation of America (Sherwin America), a wholly owned subsidiary of I.T. & T., was organized in Delaware on February 5, 1968. Three of I.T. & T.'s officers or employees signed the papers incorporating Sherwin America. By bill of sale Sheraton America transferred its assets and business to Sherwin America, and thereafter began liquidation proceedings. The charter of Sherwin America was amended on February 29, 1968, to change its name back to Sheraton America as a Delaware corporation.
In the case of Barnes v. Liebig, 1941, 146 Fla. 219, 1 So.2d 247, our Supreme Court said:
"A merger exists where one of the constituent companies remains in being, absorbing or merging into itself all the other constituent companies."
See also 7 Fla.Jur., Corporations, § 330; 15 Fletcher Cyc. Corp. (1961 Revised Volume), § 7041; 19 Am.Jur.2d, Corporations, § 1492; 19 C.J.S. Corporations § 1604.
It is clear that under this rule a merger did not occur as between I.T. & T. and the New Jersey Sheraton, although there was a merger as between Sheraton America and Sherwin America, which as before stated later became Sheraton America, a Delaware corporation.
The Stuarts also argue that the jury had a right to believe that a merger had occurred between I.T. & T. and Sheraton America because I.T. & T.'s Annual Report for 1967, which was prepared at the direction of I.T. & T. for distribution to its stockholders in accordance with the requirements of the Securities and Exchange Commission, contained the following statements:
"The merger with Sheraton Corporation of America on February 28, 1968, brought one of the world's famed hotel chains into the I.T. & T. system * * *"
"The Sheraton merger provides a broad extension of the services I.T. & T. already offers to the traveling *190 public; international communications, public parking, and car-rental services."
In Fidanque v. American Maracaibo Co., 1952, 33 Del. Ch. 262, 92 A.2d 311, the Court said:
"There is no magic in the words applied to the transaction. Calling it a merger does not necessarily make it so and giving it another name does not prevent it from being a merger." (Citing cases).
See Drovers' & Mechanics' Nat. Bank of Baltimore, Md. v. First Nat. Bank, 4 Cir.1919, 260 F. 9; Carswell v. National Exchange Bank, Ga. 1927, 165 Ga. 351, 140 S.E. 755; 19 C.J.S. Corporations § 1604, p. 1367; 15 Fletcher Cyc. Corp., § 7044, pp. 21, 22.
In the absence of a clear intent to the contrary, the Stuarts claim that I.T. & T. became liable for the New Jersey Sheraton America obligations and liabilities under its agreement with the New Jersey Sheraton America. The agreement provided that I.T. & T. would deliver or cause the I.T. & T. subsidiary to deliver to the New Jersey Sheraton America an undertaking whereby I.T. & T. or its subsidiary would assume and agree to pay substantially all obligations and liabilities of the New Jersey Sheraton America. This assumption agreement was not produced in evidence to show which corporation had actually executed it and assumed the liabilities. However, a resolution adopted by I.T. & T.'s Board of Directors on February 14, 1968, approved and authorized the assumption by its subsidiary of substantially all of the liabilities of the New Jersey Sheraton America. Also, in its Answers to Request for Admissions I.T. & T. stated that such obligations were in fact assumed by a subsidiary of I.T. & T. We do not think that this evidence was sufficient to show that I.T. & T. assumed the liabilities and obligations of the New Jersey Sheraton America.
The Stuarts failed to prove that the Delaware Sheraton America was merely the alter ego, adjunct, agency or instrumentality of I.T. & T. Ownership by one corporation of all the stock of another corporation does not destroy the identity of the latter as a distinct legal entity; nor does the fact that the stockholders or officers in two corporations are the same persons operate to destroy the legal identity of either corporation. 18 Am.Jur.2d, Corporations, § 17; 18 C.J.S. Corporations § 5, pp. 374, 375; 7 Fla.Jur., Corporations, §§ 31-38. The Stuarts did not establish control by the parent corporation over the subsidiary to the degree necessary to make it a mere instrumentality of the parent. Markow v. Alcock, 5 Cir.1966, 356 F.2d 194; 7 A.L.R.3rd 1343, 1355. The Court erred in refusing to grant I.T. & T's motion for directed verdict.
St. Petersburg Sheraton claims that its position at trial was materially prejudiced by associating it with I.T. & T., a multi-billion dollar corporation. We do not think this was the case, since it was shown that St. Petersburg Sheraton's total assets at the time of the accident was $1,471,980.
In regard to the cost judgment appealed from, in view of our holding, costs should not be taxed against I.T. & T. Moore v. Hunter, 1943, 153 Fla. 158, 13 So.2d 909; Goldstein v. Acme Concrete Corporation, Fla. 1958, 103 So.2d 202; G.M. Dykes Iron Works, Inc. v. Dehenffe, Fla. App. 1961, 131 So.2d 760.
St. Petersburg Sheraton contends that the lower Court erred in taxing costs against it for depositions taken but not used at trial and assessing attorneys' fees for failure of St. Petersburg Sheraton to admit certain requests for admissions. We think the Court was correct in assessing attorneys' fees for proving up the admissions denied by St. Petersburg Sheraton.
As to the costs of the deposition, the trial Judge stated at the hearing on the motion to tax costs that he interpreted the new statute, F.S. § 57.071, F.S.A., "to give a carte blanche to the taking of depositions and assessing them against the losing party" regardless of their use or non-use at trial. After the entry of the cost judgment in the case sub judice, our sister court of the Fourth District, in the case of Wilkins v. *191 Superx Drugs of Florida, Inc., Fla.App. 1970, 232 So.2d 19, held that the purpose of the statute is not altered, saying:
"Although the language of the present statute appears mandatory on the trial judge rather than discretionary as its predecessor, F.S. 1965, 58.13, F.S.A. nevertheless the significance of costs being related to a useful and meaningful purpose is not altered. See Cohn v. Florida National Bank at Orlando, Fla.App. 1969, 223 So.2d 767."
We have reviewed the other points raised by appellants and find that, in view of our holdings, if error was committed it was harmless or the point was not preserved for appeal.
The final judgment for compensatory damages is affirmed as to St. Petersburg Sheraton and reversed as to I.T. & T.; the judgment for punitive damages is reversed; and the cost judgment is reversed and remanded for assessing of costs against the proper party in conformity herewith.
Affirmed in part; reversed in part.
MANN and McNULTY, JJ., concur.
NOTES
[1] A flaming dish, a mixture of cornstarch, canned black cherries and an alcoholic liquor such as Cointreau, to which Flambe is added to make it "Flamboyant".