HENDRY, Judge.
The appellant Samuel T. Sapiro, one of three sets of defendants below, seeks review of a $50,000.00 judgment entered individually against him and in favor of plaintiff-appellee Leonard L. Levenstein in a jury trial. Levenstein brought an action for breach of a clause concerning “adequate water and sewer facilities” contained in a written deposit receipt contract for the sale of realty.
Appellant contends that the trial court erred in failing to direct a verdict in his behalf at the conclusion of plaintiff’s case or at the end of all the evidence. We agree for the reasons that he signed the contract only in a representative capacity and that the record fails to present evidence upon which the independent corporate identity of his wholly owned corporation might be disregarded.
On June 13, 1967, defendant Loans, Inc., which was wholly owned and controlled by Sapiro, contracted to sell the real property in question to David Levine or his assigns. The contract provided:
“Seller represents that water and sewer facilities are to the property line and will be adequate to serve the needs of the property whether developed for commercial use or apartments. Water and sewer facilities shall be provided to the purchaser at the customary hook-up charge.
“It is understood and agreed, however, by both parties that a pumping station will be required at a cost of approximately $15,000 and that this cost shall be the responsibility of the purchaser at such time as he develops the property.”
This contract was assigned by Levine to Leonard L. Levenstein. The closing occurred on January 22, 1968. The sale price was $165,000.00 of which $80,000.00 remains due on the mortgage. At the closing, Loans, Inc., through its president, Sa-piro, delivered to Levenstein its agreement that the above-quoted water and sewer provisions would survive the closing; it also delivered a warranty deed, a quit claim deed from Sapiro individually, and a quit claim deed from Community Utilities Corporation (a sewer utility, owned 51% by *42 Sapiro). Sapiro also individually agreed, by way of a guaranty of an obligation by Loans, Inc., to pay pro rata the real estate taxes due.
On April 19, 1969, Levenstein contracted with Erwin Plesko to sell for $410,000.00 the subject property. At trial Plesko, who wished to develop the tract as a shopping center, testified that he was ready, willing and able to purchase the property until March 8, 1970, but he was unable to obtain water and sewer service due to a “stop order” imposed by the Pollution Control Officer for Dade County.
The chain of title reveals that Sapiro had owned property occupied by the utility plant as well as the land which is the subject of this law suit, which is adjacent to the utility. In 1963 or 1964 Sapiro as president and sole stockholder formed Loans, Inc., and he conveyed to that corporation the subject land as the corporation’s only asset.
Sapiro’s position is that the contract provisions were merely a representation that water and sewer lines were in the ground. Levenstein asserts that the provisions constituted a guaranty of water and sewer service. Levenstein further relies on a portion of Sapiro’s testimony which Leven-stein contends was a guaranty of the performance of the obligations of Sapiro’s wholly owned corporation, Loans, Inc. under the contract. Levenstein points out that Loans, Inc. was dissolved on the closing date or within a few days thereafter. In reply, Sapiro contends that his testimony was not as to an individual guaranty of all his corporation’s obligations, but was rather a guaranty only extending to the pro rata payment of the real estate taxes. He indicated that he advised Levenstein prior to the closing that he intended to dissolve or sell Community Utilities Corporation. Community Utilities was sold to General Water Works Corporation on January 2, 1969.
Regarding the- “stop order” of further water and sewer connections imposed by the Dade County Pollution Control Officer, Sapiro asserts that Levenstein failed .to make application to the utility company for service. Levenstein detailed his unsuccessful efforts to avoid the effect of the stop order. Sapiro says that Levenstein should have asked for a reservation for these services.
Sapiro emphasises that the two other defendants, Loans, Inc. (or its trustees) and Community Utilities received jury verdicts in their favor, despite their being parties to the sale contract, which he was not. Sapi-ro signed that contract in this manner :
“Loans Inc. By /s/ Samuel T. Sapiro President”
Appellee points to jury instructions relating to Sapiro’s individual liability as to which Sapiro did not object.
The general issue on appeal concerns whether appellee-plaintiff adduced sufficient competent evidence that appellant-defendant Sapiro individually breached a provision in the written deposit receipt agreement relating to “sewer facilities.” The first specific issue is whether the ap-pellee-plaintiff adduced sufficient proof that Sapiro individually guaranteed the performance of the “sewer facilities” provision of the contract. We conclude that plaintiff adduced no evidence as to such an individual guaranty as to the sewer provisions, but only as to a guaranty of payment of real estate taxes on the property.
The second specific issue is whether the appellee-plaintiff failed to adduce sufficient competent evidence to support its allegation that the independent corporate identity of defendant Loans, Inc. should be ignored.
Appellee-plaintiff proceeded upon two legal theories at trial. The first was Sapiro individually guaranteed the contract of Loans, Inc.
We have carefully examined the record concerning the guarantee made by Sapiro. *43 We express the view that it can only be considered as to deal solely with pro rata real estate taxes.
The second legal theory was that Sapiro himself ignored the separate corporate identity of Loans, Inc. Appellee relied upon the case of Jefferson Realty of Fort Lauderdale, Inc. v. United States Rubber Company, Fla. 1969, 222 So.2d 738. In that case the plaintiff parent corporation was the real party in interest as to claims its three subsidiaries had against the defendant, and therefore, the Supreme Court held the parent was permitted to be joined and the judgment entered was allowed to run in its favor. Accord: Fontainbleau Hotel Corp. v. Crossman, 323 F.2d 937, 940 (5th Cir. 1963). Appellee also relied upon that line of cases represented by Biscayne Realty & Ins. Co. v. Ostend Realty Co., 109 Fla. 1, 148 So. 560 (1933). That case stated, at p. 566, that the corporation may be disregarded where:
“ . . . the evidence disclose [d] a state of facts ... as would require a court of equity to look beyond the mere form of the corporate entity to the person who was the sole beneficiary of its activities, directed and managed the transactions, used the corporate name at his pleasure, incurred financial obligations in its name, conveyed to himself the corporate lands he so desired, received all the money paid to the corporation by way of consideration in its transactions, if any, assumed obligations primarily assumed in the corporate name which were originally intended to be taken over by him, used the name of the corporation, and set it up as his principal, assumed to act as its agent when in fact the act in the corporate name was his act, and his act was that of the corporation. * * * ”
In short, where the corporation was the alter ego of the individual, or where fraud on creditors was involved, the corporate identify may be disregarded.
We find from the record no evidence upon which one might reasonably conclude that Sapiro himself disregarded the separate corporate existence of his wholly owned company. Similarly we find no evidence tending to show use of the corporation to perpetrate a fraud.
Therefore, for the reasons stated and upon the authority of the cases cited, we hold that the trial court erred in refusing to direct a verdict for defendant Sapiro, individually.
Reversed and remanded with directions to enter a judgment for Sapiro, individually-