279 So.2d 858 (1973)
Leonard L. LEVENSTEIN, Petitioner,
v.
Samuel T. SAPIRO, Respondent.
No. 42879.
Supreme Court of Florida.
June 20, 1973.
Rehearing Denied July 31, 1973.
*859 Ray H. Pearson and Bertha Claire Lee, of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for petitioner.
Linton R. Lovett, of Nicholson, Howard, Brawner & Lovett, Miami, for respondent.
ERVIN, Justice.
We review by writ of conflict certiorari the decision of the District Court of Appeal, Third District, in Sapiro v. Levenstein, 266 So.2d 40.
We advert to the statement of facts appearing in the District Court opinion. Therefrom it appears that on June 13, 1967, Loans, Inc., wholly owned and controlled by its president, Respondent Samuel T. Sapiro, as sole stockholder, contracted to sell certain real property to one David Levine or his assigns. The contract provided:
"Seller represents that water and sewer facilities are to the property line and will be adequate to serve the needs of the property whether developed for commercial use or apartments. Water and sewer facilities shall be provided to the purchaser at the customary hook-up charge."
The contract was assigned by Levine to Leonard L. Levenstein, and the closing between Levenstein and Loans, Inc. occurred on January 22, 1968, at which time Sapiro delivered to Levenstein the agreement that adequate sewage facilities would be provided. Immediately following the closing Loans, Inc. was dissolved, since its only asset was the tract of land.
The following year Levenstein contracted to sell the property to one Erwin Plesko for $410,000 who wished to develop the tract as a shopping center. The deal was never closed because Plesko was unable to obtain water and sewer service due to a "stop order" imposed by the Pollution Control Officer for Dade County, Florida.
Levenstein brought an action for breach of the sales contract clause relating to adequate water and sewer facilities. Named as defendants were Sapiro, individually; Loans, Inc., a dissolved Florida corporation, and its trustees; and Community Utilities Corporation, fifty-one percent of which was owned by Sapiro and into whose sewage system the hook-up would have been made had it been permitted. Sapiro also served as president and general manager of Community Utilities.
Petitioner Levenstein proceeded upon two legal theories at trial. The first was that Sapiro individually guaranteed the contract of Loans, Inc. The second theory was that Sapiro ignored the separate corporate entity of Loans, Inc., and therefore the corporation served only as the alter ego of Sapiro.
The jury returned a verdict for $50,000 in favor of Petitioner and against Sapiro individually; all other defendants were found not guilty.
On Sapiro's appeal of the judgment based on the verdict, the District Court ruled that the trial court erred in failing to *860 direct a verdict in favor of Sapiro. In its decision the District Court reviewed the testimony presented by the various witnesses and concluded that Sapiro's "guarantee" dealt only with pro rata real estate taxes and not with sewer facilities. In deciding whether the cause presented an instance where the corporate veil should be pierced, the District Court stated:
"We find from the record no evidence upon which one might reasonably conclude that Sapiro himself disregarded the separate corporate existence of his wholly owned company. Similarly we find no evidence tending to show use of the corporation to perpetuate a fraud."
We conceive the conflict issues to be as follows:
(1) Whether the District Court erred by re-evaluating conflicting testimony and substituting its judgment on disputed issues of fact for that of the jury.
(2) Whether the wholly owned and controlled corporation in this case should have its corporate veil pierced so as to hold its president and owner liable for breach of contract.
From the opinion of the District Court supplemented by reference to the record proper, it appears to us the District Court decision is in conflict with controlling decisions that an appellate court cannot substitute its judgment by a re-evaluation of the evidence. See Westerman v. Shell's City, Inc., Fla. 1972, 265 So.2d 43, and Hilkmeyer v. Latin American Air Cargo Expediters, Fla. 1957, 94 So.2d 821.
The record reflects that the trial court instructed the jury as follows:
"In determining liability, you would have the privilege, if you found that the facts justify it, to find that only Mr. Sapiro was liable or Mr. Sapiro and Loans Incorporated or its directors are liable or Mr. Sapiro, Loans Incorporated and the utility company, all three, were liable or any of them were and the others were not, depending on what you find the facts to establish."
The District Court appears imbued with the idea that when an individual deals through the instrumentality of his solely owned corporation his protection from individual liability is absolute except where fraud is clearly involved. We do not believe the rule of limited individual liability is that restrictive. There may be cases such as this one where the nature of the relationship between the individual and his alter ego, his corporation and their activity is so completely personalized that the ingredient of actual fraud is unnecessary in order for the individual to be held liable for a contractual obligation made in the name of his corporation. Here Sapiro wholly owned Loans, Inc. as sole stockholder. The only asset it had was the title to the land which Sapiro had conveyed to it.
Immediately after the closing of the sale of the land to Levenstein was completed, Loans, Inc. was dissolved. Consequently no one remained to carry out at any time in the future the seller's agreement in the land sale contract to provide water and sewer facilities except Sapiro. Under these circumstances which were duly outlined in the Plaintiff-Petitioner's complaint, the trial judge deemed there was a sufficient equitable basis prima facie for the jury to determine from the evidence if Sapiro was individually liable on the agreement to provide water and sewer facilities.
We do not believe the rule of limited individual liability is so pervasive and absolute as to preclude a trial judge from duly considering equitable principles and having a factual determination made in a proper case as to whether an individual rather than his wholly owned corporation is liable.
As in the case of Biscayne Realty & Ins. Co. v. Ostend Co., 1933, 109 Fla. 1, 148 So. 560, the facts of the instant case are of those kind which allow application of the rule that under certain inequitable circumstances courts may disregard corporate form where
"... the evidence disclose[d] a state of facts . .. as would require *861 a court of equity to look beyond the mere form of corporate entity to the person who was the sole beneficiary of its activities, directed and managed the transactions, [and] used the corporate name at his pleasure ..." Biscayne Realty Co., supra, at 566.
Under present rules of civil practice relating to equity and law, the trial court was authorized in this case to direct the jury under appropriate instruction to ascertain from all pertinent facts if the dissolved corporation should be disregarded in determining whether Sapiro was liable.
The District Court erred in substituting its evidentiary finding for that of the trial court when it said,
"We find from the record no evidence upon which one might reasonably conclude that Sapiro himself disregarded the separate corporate existence of his wholly owned company."
This District Court finding was a substituted one directly in the face of the trial court's prima facie determination that equitable principles indicated Sapiro had made use of his corporation to serve his individual purposes which the jury found to be the case. The question was one of fact, not of law, based upon the particular circumstances of the case.
Under the rule of Biscayne Realty & Ins. Co. v. Ostend Realty Co., supra, questions of equitable factual considerations were deemed by the trial judge to be of sufficient pertinency to go to the jury for a verdict.
Therefore, there was a conflict of decisions with Westerman v. Shell's City, Inc., supra, when the District Court substituted its determination of the equities and the facts for those of the trial court.
The decision of the District Court is quashed with direction to reinstate the judgment of the Circuit Court.
CARLTON, C.J., and ROBERTS, ADKINS and BOYD, JJ., concur.