421 So.2d 728 (1982)
VANTAGE VIEW, INC., Appellant,
v.
BALI EAST DEVELOPMENT CORPORATION, Etc., et al., Appellees.
No. 81-289.
District Court of Appeal of Florida, Fourth District.
November 10, 1982.
*729 Kay Latona of Becker, Poliakoff & Streitfeld, P.A., Fort Lauderdale, for appellant.
Julio C. Alonso of Meyer, Weiss, Ross, Arkin, Shampanier, Ziegler & Barash, P.A., Miami Beach, for appellee, Bankers Trust Co.
GLICKSTEIN, Judge.
Appellant, a condominium association, brought an action against appellee, Bankers Trust Company, and others for breach of implied warranty, negligence, and strict liability arising out of a number of construction defects and deficiencies. The trial court dismissed with prejudice in the same order appellant's amended complaint and second amended complaint against Bankers, ostensibly basing its dismissal on appellant's failure to allege facts which would justify holding Bankers liable for the acts of its subsidiary, Real-Prop Investors Atlantic, Inc. Appellant does not appeal that part of the order which dismisses the count concerning strict liability, but argues the counts based on implied warranty and negligence state a cause of action. We agree; therefore we reverse and remand.
Appellant's complaint alleged alternative theories of recovery against Bankers: that Bankers and Real-Prop were jointly and severally liable as developers[1]; or, in the alternative, that Bankers was liable for the acts of its subsidiary as the developer of the condominium. The trial court, appellant correctly contends, considered only the latter theory of recovery. In Bond v. Koscot Interplanetary, Inc., 246 So.2d 631 (Fla. 4th DCA 1971), this court stated:
"If a complaint states a cause of action upon any ground, a motion to dismiss the complaint for failure to state a cause of action should be denied. * *"
Id. at 633 (emphasis original), citing Regan v. Davis, 97 So.2d 324 (Fla. 2d DCA 1957), as quoted in Lytell v. McGahey Chrysler-Plymouth, Inc., 180 So.2d 354, 355 (Fla. 3d DCA 1965).
*730 As to the count alleging breach of implied warranty, appellant claimed:
5.2 The Developers (BALI EAST, BANKERS TRUST and REALPROP), impliedly warranted to the Condominium's unit owners that each Condominium parcel was reasonably fit for its intended purpose and merchantable, and that the Condominium building and improvements were constructed in accordance with the plans and specifications filed as a matter of public record.
5.3 The Developers breached the aforesaid implied warranty by failing, in constructing the Condominium building and improvements, to comply with the requirements of the South Florida Building Code, failing to construct in accordance with proper and approved construction plans and specifications, and failing to employ good design, engineering and construction practices, as a direct and proximate result of which the Developers constructed the Condominium building and improvements and sold parcels thereof to the unit owners with the defects and deficiencies set forth in Exhibit "A".
These allegations state a cause of action. See Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA), aff'd, 264 So.2d 418 (Fla. 1972); B & J Holding Corp. v. Weiss, 353 So.2d 141 (Fla. 3d DCA 1977); David v. B & J Holding Corp., 349 So.2d 676 (Fla. 3d DCA 1977).
Concerning its count for negligence, appellant's second amended complaint alleged the following:
6.2 At all times material hereto, the Developers (BALI EAST, BANKERS TRUST and REALPROP), by themselves and through their agents, servants and employees, designed, constructed, supervised, inspected and approved for occupancy the Condominium building and improvements, and were under a duty to the members of the Association to use reasonable care in so doing.
6.3 At all times material hereto, the Developers, by themselves and through their agents, servants and employees, undertook to construct the Condominium building and improvements, and were under a duty to members of the Association to do so in accordance with the South Florida Building Code, proper and approved plans and specifications, and proper design, engineering and construction practices.
6.4 The Developers were careless and negligent in designing, constructing, supervising, inspecting and approving for occupancy the Condominium building and improvements because of their failure to comply with the requirements of the South Florida Building Code, failure to construct in accordance with proper and approved construction plans and specifications, and failure to employ good design, engineering and construction practices, as a direct and proximate result of which the Developers constructed the Condominium building and improvements and sold parcels thereof to the unit owners with the defects and deficiencies set forth in Exhibit "A".
These, too, recite elements of a legally cognizable action against a developer. See Wittington Condominium Apartments, Inc. v. Braemar Corp., 313 So.2d 463 (Fla. 4th DCA 1975), cert. denied, 327 So.2d 31 (Fla. 1976). Accordingly, the trial court, in failing to examine all theories advanced by appellant, committed error.
The final issue in this case is whether appellant alleged sufficient facts to avoid dismissal of an action seeking to pierce the corporate veil of Real-Prop, Banker's subsidiary. We hold that it did. In reaching our conclusion, we hearken back to the analysis and collection of authorities by the late Circuit Judge W. Troy Hall, Jr., in Waterman Memorial Hospital Association v. Rigdon, 32 Fla. Supp. 154 (Cir.Ct. Lake County 1969), which the writer of this opinion has long admired. He said in considering a motion to dismiss:
Much of the time of this and other courts is consumed in hearing such procedural matters. This in large part results from the fact that professional customs and practices have a tendency to linger long after they are supposed to have been changed by duly promulgated rules, statutes *731 or decisions... . It may well be that early common law pleading rules had certain advantages over the rules of modern pleading. The fact remains, however, that the rules have changed, F.R.C.P. 1.110(b) requires "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." The Black's Law Dictionary definition of "ultimate facts" includes the following 
"The logical conclusions deduced from certain primary evidentiary facts ... Those facts found in that vaguely defined field lying between evidential facts on the one side and the primary issue or conclusion of law on the other ... The final resulting effect reached by processes of legal reasoning from the evidentiary facts."
Id. at 155.[2]
The nature of this "vaguely defined field" is such that confusion may be, to a certain degree, inevitable. Perhaps the most helpful method of ascertaining the type of pleading required under present rules is to examine the forms which are appended to them. Sometimes a page of the concrete is worth more than a volume of abstract semantics. No set of forms could cover every situation but the forms were apparently intended to illustrate what is required. Each is obviously a "short and plain statement" and contains only a few sentences. Although there are no doubt a few exceptions, we assume that generally speaking the forms show the general type of pleading required and that other types would be the exceptional cases  not vice versa.
Id. at 156 (footnote omitted) (emphasis supplied).
The ultimate facts alleged in paragraph 3.2(a) are that Bankers established Real-Prop as a mere instrumentality and a sham to mislead creditors.[3] We start with the *732 following text recited by Judge Hall for determining the sufficiency of a complaint:
In Conley v. Gibson, supra, the U.S. Supreme Court also laid down the test which has become the standard criterion in federal courts for determining the sufficiency of a complaint, and that is that a complaint "should not be dismissed for insufficiency unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." This same quotation was set out with approval and italicized in the Florida case of Martin v. Highway Equipment Supply Co., Inc., supra [172 So.2d 246 (Fla. 2d DCA 1965)].
The U.S. Court of Appeals for this, the fifth circuit, has, in numerous cases in recent years, been reversing trial judges for dismissing complaints. Most of such cases, incidentally, originated in Florida. (See Barber, infra.) In Arthur H. Richland Co. v. Harper, 5th Cir., 302 Fed.2d 324, the court declared, through Judge Brown 
"This is another case proving that final disposition of a civil action on the basis of bare bones pleading is a tortuous thing. How a standard so simply *733 expressed, so often repeated, is apparently so often overlooked without even so much as a mention is hard to understand."
Id. at 159.
We said earlier that the ultimate facts alleged by appellant are: (1) the parent established the subsidiary as a mere instrumentality and a sham; and (2) the parent did so to mislead creditors and to avoid liability. As for the first allegation, we are not enamoured with the word "instrumentality" but there is authority for its use. We interpret such word to be the equivalent of "alter ego" or "agent"; and we hold that in order to state a cause of action against a parent corporation for the acts of its subsidiary, it is sufficient to allege the latter to be the alter ego or agent of the parent.
An early decision which serves as a primary basis for our holding is Berkey v. Third Ave. Ry., 244 N.Y. 84, 94, 155 N.E. 58, 61 (1926), wherein the late Justice Cardozo said:
The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor... . We say at times that the corporate entity will be ignored when the parent corporation operates a business through a subsidiary which is characterized as an "alias" or a "dummy." All this is well enough if the picturesqueness of the epithets does not lead us to forget that the essential term to be defined is the act of operation. Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice.
(Emphasis supplied.)
We also agree with the principle recited in Baker v. Raymond International, Inc., 656 F.2d 173, 181 (5th Cir.1981), that the parent corporation, to be liable for its subsidiary's acts under the alter ego or agency theory, must exercise control to the extent the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation."
This principle of parent liability is not alien to Florida law. Beginning with Mayer v. Eastwood-Smith & Co., 122 Fla. 34, 43, 164 So. 684, 687 (1935), the Supreme Court of Florida wrote:
The overwhelming weight of authority is to the effect that courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.
(Emphasis supplied.) Next, in Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247 (1941), the Supreme Court of Florida reversed the trial court's dismissal of a complaint against two parent corporations in a negligence case. The complaint alleged the bus involved in the suit was operated by company A, which was the wholly owned subsidiary of companies B and C. Plaintiffs alleged the subsidiary corporation used the authorizing certificates of the two parent corporations in the operation of the bus and was
so organized, operated, owned and controlled as to be the mere instrumentality, adjunct and simulacrum [of companies B and C]; ... [as well as] the mere alter ego of [these companies].
Id. at 237, 1 So.2d at 254. The court, quoting liberally from an Alabama decision,[4] noted:
[I]t is well settled that the legal fiction of distinct corporate existence may be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted as to make it merely an instrumentality or adjunct of another corporation.
*734 Id. In conclusion, the Supreme Court of Florida announced:
It is apparent then that the theory of a subordinate or servient corporation being controlled by and being liable to a superior or dominant corporation for its acts, so that the latter could be held liable in an action at law for the negligence of the former, is in force in this State.
Id. at 237-38, 1 So.2d at 254-55.
Thereafter, in Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849, 852 (Fla. 1971), the supreme court, citing Mayer v. Eastwood-Smith & Co., wrote:
So it is that courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.
(Emphasis supplied.) We reiterated this holding in Tiernan v. Sheldon, 191 So.2d 87, 89 (Fla. 4th DCA 1966), cert. dismissed, 200 So.2d 183 (Fla. 1967). More recently the supreme court held that proof of fraud was unnecessary in order for an individual stockholder to be held liable for a contractual obligation made in the name of his corporation. Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973).[5] In Levenstein the supreme court reversed the Third District Court of Appeal's holding that when an individual deals through the instrumentality of his solely owned corporation, his protection from liability is absolute absent fraud. In so holding, the court stated,
There may be cases such as this one where the nature of the relationship between the individual and his alter ego, his corporation and their activity is so completely personalized that the ingredient of actual fraud is unnecessary in order for the individual to be held liable for a contractual obligation made in the name of his corporation.
Id. at 860. Most recently, we followed this reasoning in Fenick v. Robertson, 406 So.2d 1263 (Fla. 4th DCA 1981).
Although Levenstein involved a one-man corporation, there is nothing in the opinion to prevent an extension of the rule to a different context, such as between two corporations. Such extension apparently did occur in McLain v. Daps Discount Auto Parts Store, Inc., 354 So.2d 1230 (Fla. 1st DCA 1978). The plaintiff in McLain sought to hold Daps, a Florida corporation, liable for a foreign judgment rendered against Discount Auto Parts, Inc., an Alabama corporation, on the theory that Daps was the alter ego of Discount. The court, in holding the trial court erred in instructing the jury that it could award only nominal damages if it found for plaintiff, wrote:
If a corporation is found to be the "alter ego" of another corporation, the separate corporate identities are disregarded and the two corporations are considered as one entity.
Id. at 1232.
A problem arises because a substantial line of authority exists in Florida that holds:
The rule is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them.
Riley v. Fatt, 42 So.2d 769, 773 (Fla. 1950).[6] Other cases add the prevention of injustice *735 to the foregoing misdeeds which permit piercing the corporate veil.[7] As our sister court said in Unijax, Inc. v. Factory Insurance Association, 328 So.2d 448, 454 (Fla. 1st DCA), cert. denied, 341 So.2d 1086 (Fla. 1976):
"In order to establish that a subsidiary is the mere instrumentality of its parent, three elements must be proved: control by the parent to such a degree that the subsidiary has become its mere instrumentality; fraud or wrong by the parent through its subsidiary, e.g., torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary."[8]
If all of the three foregoing elements must be proved,[9] then they must be alleged. It is plain that in the present case, the third element was not alleged; namely, "unjust" loss to the claimant.
While we are unable to reconcile the two lines of authority which we have discussed, we choose to follow the decision of the supreme court in Barnes, Mayer, Aztec and Levenstein which have held it sufficient to allege domination and control without the necessity of alleging improper purpose or unjust loss. Similarly, we reaffirm the decision of this court in Tiernan wherein we said:
Florida decisions uniformly hold that courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, or where the corporation was employed by the stockholders for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetuate a fraud upon them, or to evade existing personal liability.
Id. at 87 (emphasis supplied). This result comports with the purpose of the corporate law, which is to insulate an investor (in this case the parent corporation) from personal liability for the torts of a separate corporate entity which is not the alter ego or agent of the investor. At the same time it gives efficacy to the tort principle that a tort-feasor should be held accountable for the injuries it causes. In light of the foregoing precedents and policy reasons, we reverse and remand for further proceedings consistent herewith.
REVERSED AND REMANDED.
DOWNEY and DELL, JJ., concur.
NOTES
[1] The term "developer" as used in appellant's pleadings is substantially the same as the definition given in section 718.103(13), Florida Statutes (1977). Paragraph 3.3 of appellant's second amended complaint alleged:

BANKERS TRUST and REALPROP ("Developers") were jointly and severally the Developers of the real property and all improvements thereon now known as Vantage View, A Condominium, located in Broward County, Florida, by virtue of having created and/or sold units in the ordinary course of their business, or in the alternative, BANKERS TRUST is liable for the acts of its subsidiary, REALPROP, as Developer of the Condominium.
Section 718.103(13), Florida Statutes (1977), defines developer as:
a person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business, but does not include an owner or lessee of a unit who has acquired his unit for his own occupancy.
[2] See also the adoption of such definition of "ultimate facts" by this court in Feldman v. Department of Transportation, 389 So.2d 692 (Fla. 4th DCA 1980).
[3] The foregoing allegations were actually part of the last sentence of the critical paragraph. The entire paragraph contained mostly "evidentiary facts":

3.2(a) Defendant, BANKERS TRUST COMPANY, hereinafter referred to as BANKERS TRUST, is a corporation organized and existing pursuant to the laws of the State of New York, and is registered to do business in the State of Florida. BANKERS TRUST wholly financed its subsidiary REALPROP INVESTORS ATLANTIC, INC., hereinafter referred to as REALPROP, with a Fifty Thousand ($50,000.00) Dollar cash contribution on June 8, 1977; subsequently BANKERS TRUST has advanced Three Hundred Ninety-Four Thousand ($394,000.00) Dollars to REALPROP from June 1977 through May 1978, under an ongoing agreement to keep approximately a Fifty Thousand ($50,000.00) Dollar balance in REALPROP's bank account. BANKERS TRUST also paid the expenses incurred on the formation and incorporation of REALPROP, with no arrangements made for repayment. Although REALPROP's net loss through June 30, 1980 was in excess of Three Hundred Forty Thousand ($340,000.00) Dollars, BANKERS TRUST continues to assure that REALPROP retains Fifty Thousand ($50,000.00) Dollars in its bank account, which may be withdrawn by the single signature of any of six persons, five of whom are Assistant Vice-Presidents in both BANKERS TRUST and REALPROP. When REALPROP's bank balance exceeds Fifty Thousand ($50,000.00) Dollars, the excess is repaid to BANKERS TRUST. Every director of REALPROP from its inception was, during his/her tenure also a director of BANKERS TRUST. None of REALPROP's directors were paid as such. Every officer of REALPROP from its inception was during his/her tenure also an officer of BANKERS TRUST. No salaries were ever paid to its officers by REALPROP. BANKERS TRUST supplies to REALPROP without charge the services of employees and management personnel and bookkeeping services with regard to the assumption of mortgage debt by REALPROP. BANKERS TRUST formed REALPROP with the intention of acquiring title to properties which might be acquired because of loans made or held by BANKERS TRUST, and to hold, lease, operate, improve, assign, transfer, exchange or in any way deal with such acquired property. BANKERS TRUST established REALPROP as a mere instrumentality and a sham to mislead creditors and to avoid tort or implied warranty liability, undercapitalizing it, using BANKERS TRUST's own directors and officers to control and direct REALPROP and its policies.
It is hoped that the Bench and Bar will heed Judge Hall's plea that "evidentiary facts" need not and should not be alleged whereas ultimate facts must be alleged. The problem arises solely because of a persistence on the part of the Bar to include more than "ultimate facts" and a propensity on the part of the Bench to require it. As he points out:
Florida appellate courts have held repeatedly that federal cases interpreting Federal Rules of Civil Procedure are pertinent and persuasive in interpreting similar Florida rules. Delta Rent-A-Car, Inc. v. Rihl, Fla.App. 4th, 218 So.2d 467; Crump v. Goldhouse Restaurants, Inc. Fla., 96 So.2d 215, 65 ALR 2d 637; Savage, v. Rowell Distributing Corp., Fla., 95 So.2d 415; Hammac v. Windham, Fla.App. 1st, 119 So.2d 822; Brown v. Ripley, Fla.App. 1st, 119 So.2d 712; Booker v. Smith, Fla. App.2d, 108 So.2d 790; Davis v. Davis, Fla. App. 1st, 123 So.2d 377. This court is unable to determine any essential difference between the federal and Florida rules on the subject of the procedural sufficiency of complaints. The Florida rule, 1.110(b), is substantially the same as the federal rule, 8(a). Both require only "a short and plain statement." The Florida rule says that a complaint shall "state a cause of action" and the federal rule uses the words "a claim upon which relief can be granted," but the Florida Court of Appeal, 2nd District, in Martin v. Highway Equipment Supply Co., Inc., 172 So.2d 246, declared 
"Rule 1.11(b), Rules of Civil Procedure, 30 F.S.A.. . provides that the defense of `(6) failure of the pleading to state a claim upon which relief can be granted,' which language of the federal rule is nothing more or less than the definition of a `cause of action.' Both rules mean the same".
See also Gold Seal Company v. Weeks, D. of C., 209 Fed. 2nd 802, holding the federal "claim" phrase means "cause of action."
The requirement for stating "ultimate facts" is not expressly set forth in the federal rules but it is there by implication. Cyc. of Fed. Proc., § 14.175.
The leading federal decision on the procedural sufficiency of complaints is Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, a labor relations case where the U.S. Supreme Court declared through Mr. Justice Black 
"The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is `a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified `notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that `all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." (Italics added.)
In an official order of the Florida Supreme Court dated January 21, 1950 the court approved the federal pleading forms which had been adopted by the U.S. Supreme Court a number of years earlier and the introduction to which stated that they were for "illustration only." More recently the Florida Supreme Court has approved Florida pleading forms which are in a number of cases identical with, and in the other cases very similar to, the federal forms.
Id. at 157-59.
[4] Jefferson County Burial Soc'y v. Cotton, 222 Ala. 578, 582, 133 So. 256, 259 (1930).
[5] See also Charter Air Center, Inc. v. Miller, 348 So.2d 614 (Fla.2d DCA), cert. denied, 354 So.2d 983 (Fla. 1977); St. Petersburg Sheraton Corp. v. Stuart, 242 So.2d 185 (Fla.2d DCA 1970), Bermil Corp. v. Sawyer, 353 So.2d 579 (Fla.3d DCA 1977), and Ryan v. Wren, 413 So.2d 1223 (Fla.2d DCA 1982). In St. Petersburg the Second District Court of Appeal said the trial court erred in refusing to grant a directed verdict in favor of I.T. & T. because the evidence did not establish that a subsidiary was the "alter ego, adjunct, agency or instrumentality of I.T. & T." 242 So.2d at 190. No mention was made of the failure to prove any other element.
[6] Accord Futch v. Southern Stores, Inc., 380 So.2d 444 (Fla. 1st DCA 1979); Delta Air Lines, Inc. v. Wilson, 210 So.2d 761 (Fla.3d DCA 1968); Sirmons v. Arnold Lumber Co., 167 So.2d 588 (Fla.2d DCA 1964).
[7] Roberts' Fish Farm v. Spencer, 153 So.2d 718 (Fla. 1963). This court said in Computer Center, Inc. v. Vedapco, Inc., 320 So.2d 404, 406 (Fla.4th DCA 1975), cert. denied, 333 So.2d 465 (Fla. 1976):

Courts are reluctant to disregard the corporate entity unless it is necessary to prevent fraud, illegality, or injustice. However, the corporate veil will be pierced when it is shown that the corporation is a mere device or sham used to mislead creditors or for fraudulent purposes.
[8] We consider it significant that in Unijax it was the parent corporation which was attempting to persuade the court that its subsidiaries were merely its instrumentalities in order that it could assert an action in its own name to recover on an insurance policy. Very different considerations are at stake when it is the parent corporation itself which is attempting to disavow the corporate fiction which it created. See Gulfstream Land & Development Corp. v. Wilkerson, 420 So.2d 587 (Fla. 1982) (parent corporation cannot claim immunity of subsidiary under Worker's Compensation Law).
[9] As for the proof thereof, see National Bond Fin. Co. v. General Motors Corp., 341 F.2d 1022, 1023 (8th Cir.1965), which held:

The question of whether a corporation is an instrumentality or an alter ego of another corporation presents primarily an issue of fact to determine upon the basis of the facts of each individual case.
Accord, Fish v. East, 114 F.2d 177 (10th Cir.1940), which recognized a number of determinative circumstances which will induce a court to disregard the corporate form of a subsidiary. See also Markow v. Alcock, 356 F.2d 194 (5th Cir.1966); Bay Sound Transp. Co. v. United States, 350 F. Supp. 420 (S.D.Tex. 1972), aff'd, 474 F.2d 1397 (5th Cir.1973); Reininger, The Corporate Veil in Florida  Armor or Lace?, 54 Fla.Bar J. 202 (1980); Annot., 16 Proof of Facts 2d 679 (1978); Annot., 7 A.L.R.3d 1343 (1966).