GLICKSTEIN, Judge.
This is an appeal by the intervening successor developer from a final judgment rendered in favor of the clerk of the circuit court, who brought an action against Palm Beach County and the Palm Beach County Public Building Corporation. We affirm. The following facts are recited in the thorough final judgment sculpted by the acting circuit judge who presided at the trial:
This suit concerns the $20,000,000 county administrative complex which is presently being constructed adjacent to the existing county courthouse. On January 5, 1981 the Clark Haney Development Team entered into an agreement to construct the administrative complex. As a part of the agreement with the County it was agreed that the financing vehicle for the administrative complex would be a corporation.
Pursuant to that agreement, on April 2, 1981 the Palm Beach County Public Building Corporation, Incorporated, a non-profit corporation was officially chartered. The directors all serve at the discretion of the Board of County Commissioners of Palm Beach County. The Corporation has no members, no stock, no dividends and distributes no income. All assets of the Corporation are to be transferred as a gift to Palm Beach County upon repayment of the Corporation’s $20,000,000 bond issue.
On June 1, 1981 Palm Beach County leased the land that they own adjacent to the present courthouse to the Corporation for a term of thirty years. On the same day the Corporation leased back to the County, for thirty years, the administrative complex. On the same day the Corporation issued $20,000,000 in revenue bonds to finance the construction of the administrative complex. The County ultimately bears the responsibility for repaying these bonds. The rent that the County pays to the Corporation is not a fixed amount, but is in an amount sufficient to cover all repayment on the bonds. Some outside income is earned from interest on the revenues raised and from a Lease to W & F of 70,000 of the approximately 290,000 square feet of the administrative complex. The amount of W & F space decreases over a period of time as the County’s need for space increases. Profits W & F earns in re-leasing this space to private businesses are split equally with the County.
*556 The funds from the bond issue have been deposited under an indenture of trust with the First Marine Bank and Trust Company of Palm Beach which acts as the trustee. Payments for construction costs are made directly by the trustee.
The corporation, as the work progresses, submits a request for payment to the County Commissioners or County Administrator, not to the Clerk, for approval prior to payment. (Described in Plaintiffs Exhibit One, document 1.03, Article VI.) The Clerk has no preaudit, audit, custodial, recording or bookkeeping function under the Corporation’s method of preauditing and disbursing funds.
W & F has an interest that would be affected by the declaration of the Court because delays in construction, disputes over disbursement of money, problems with subcontractors, and litigation, all involving W & F could arise as a result of the Court’s declaration.
The trial judge then said:
Presently the funds of the Defendant, Palm Beach County Public Building Corporation, Inc., are being disbursed without the Clerk exercising any power, privilege or right over these funds.
The Court has also been requested to determine the validity or invalidity of the bond issue which resulted in the Defendant Corporation acquiring $20,000,000. The proceeds of this bond issue are presently being expended in the construction of the administrative complex. If these funds were improperly or unlawfully acquired, the Clerk may not be able to disburse them. The Clerk is in doubt as to whether a bond validation referendum was required by law.
The pivotal point in this controversy is whether or not the funds of the Palm Beach County Public Building Corporation are funds of Palm Beach County. The Clerk is the auditor, recorder, custodian and general watchdog of all Palm Beach County funds. Alachua County v. Powers, 351 So.2nd 32 (Fla.1977). [Emphasis added by this court.]
The Defendants claim that the purpose of the corporation is to allow a separate, legally recognized entity to exist. They claim that these bonds are clearly issued by a separate legal entity, the Corporation, that the only body directly obligated to repay the bonds is the Corporation and that the County is solely a lessee of the Corporation.
A corporation is a legal entity by fiction of law with certain specific purposes:
To limit the liability of the equity owners in the corporation, in this corporation there are no equity owners.
To separate the assets of the corporation from the assets of the stockholders of the corporation, in this corporation there are no stockholders.
To separate the assets of the corporation from the assets of the incorporators, in this corporation the County is the in-corporator, it is the County assets that back the bond issue and all the corporate assets immediately become the County’s upon payment of the bond issue.
To preserve the corporate assets for corporate creditors, the only asset of the Corporation is temporary legal title, but not equitable title, to the administrative complex, the real security for the creditors is the nonadvalorem tax revenues of the County.
To acquire or dispose of property separately from its members, in this instance the corporation can not do this without first obtaining the approval of the County.
The $20,000,000 bond issue revenues come from investors who purchased bonds of the Corporation. The bondholders will be directly repaid by the Corporation. The source of funds to repay the revenue bonds comes from the County. Incidental amounts come from a lease agreement with W & F and from interest earned on unspent money being held by the trustee.
Palm Beach County in the past has issued bonds directly as an obligation of Palm Beach County. In this venture, the *557 County used an unconventional method of issuance; the formation of the public building corporation.
These bonds appeal to investors due to:
a) their tax free status since the Internal Revenue Service regards these bonds as being issued by a political subdivision of the state.
b) their marketability since the bonds are backed by a lease of the administrative complex from the Corporation to the County wherein the County guarantees that it will pay sufficient revenues to the Corporation to enable the Corporation to repay the bond holders. Without the backing of the County’s nonadvalorem tax revenues the bonds would be unmarketable.
The Corporation was created to finance the development of the County administrative offices, the Corporation was formed by County officials. The officers and directors of the Corporation serve at the pleasure of the County Commissioners, the Bylaws and Articles of Incorporation may not be changed without the approval of the County Commissioners. The County Commission and the County Administrator exercise the right to approve or disapprove expenditures of the Corporation, County approval was needed before the Corporation could issue bonds, the Corporate office is the County Attorney’s office, the Resident Agent is the County Attorney, the financial advis- or is the County’s financial advisor, the complex is on County owned land and the assets of the Corporation pass to the County when the bonds are paid off.
In short, when looking at the formation, the purpose, the personnel, the financial backing, the ultimate goals and the ultimate beneficiary of the Corporation’s activities the Court finds that the Corporation is a subordinate, dependent, division of Palm Beach County. The Court finds that the real party backing these bonds is the County. The concept of a corporate entity in an equity action such as this action is used as a formula for working out the rights and the equities of the real parties in interest. 8 Fla.Jur.2d, Business Relationships, section 19.
The appeal has been limited in scope to a single determinative issue; namely, whether there is substantial competent evidence in the record, supported by applicable law, to justify affirmance of the trial court’s determination that the appellee clerk has the authority to pre-audit the contemplated expenses of this project and to audit those which have been expended. We conclude that the final judgment meets the evidentiary and precedential tests.
As for the former, the trial judge delineated his conclusion that the public corporation was the alter ego of the county for the purpose of an inquiry. See Vantage View, Inc. v. Bali East Development Corp., 421 So.2d 728 (Fla. 4th DCA 1982). We have quoted herein all of the factors he considered in this regard and would add the record evidence of one expert opinion that the funds were county public funds and of another that the public corporation would be categorized as the county for financial reporting services.
As for the law, by way of preliminary statements, neither the county nor the public corporation appealed the trial court’s decision; therefore, there is no input to this court from either of those bodies upon the law which should govern the disposition of this case. However, the Alachua County case, which the trial judge cited, spelled out the pre-audit and audit functions, pursuant to then existing statutes. It is these, and only these, functions to which the appellee clerk is limiting his claim for relief and which we interpret as the four corners of the final judgment upon which review is being sought by appellant. The court said in Alachua County:
We first consider the clerk’s auditing responsibility. Section 129.09, Florida Statutes (1975), forbids the clerk “acting as county auditor,” from signing illegal warrants and provides both personal and criminal liability for violation of this provision. The clerk, as auditor, is required by law to refuse to sign and deliver a *558 county warrant for an unlawful expenditure, even though approved by the board of county commissioners. Mayes Printing Company v. Flowers, 154 So.2d 859 (Fla. 1st DCA 1963). Although an appropriation of county funds may serve a county purpose, there must be some type of pre-audit review of the disbursement in order to be sure that the funds will not be used for an unlawful purpose.
Section 136.08, Florida Statutes (1975), provides that the accounts of the board of county commissioners and the account of any bank acting as a depository shall be subject to the inspection and examination of the “county auditor, the auditor general and the department of banking and finance of persons designated by it.” Section 11.45(3)(a), Florida Statutes (Supp.1976), provides for post-audits by the auditor general of accounts and records of “county agencies,” which includes the board of county commissioners and the clerk of the circuit court. See Section 11.45(l)(e), Id, defining county agencies. All agencies have the power to have a performance audit or post-audit of their accounts and records by an independent certified public accountant retained by them and paid from their public funds. Section 11.45(3)(a), Id.
351 So.2d at 36. The legislature has wisely not done anything since that decision to devitalize the caretaking of public funds; and we conclude it appropriate that the statutory authority apply to the facts of this ease.
Since the entry of final judgment and the denial of any stay by the trial judge as well as this court’s earlier refusal to lift the stay, the clerk has obviously been engaged in both functions. The only testimony in the record to reflect material concern with the clerk’s involvement was the fear of collapsing the project because of delays in legitimate payments. There was no evidence whatsoever that the clerk’s involvement would occasion needless, devastating delays in legitimate payments. The only testimony, in fact, was that the clerk’s participation would not occasion such delay in legitimate payments.
The public has every right to be concerned with the legitimacy of each and every payment involved in this project. The taxpayers look to the clerk’s audits to shield them from the kinds of misuse of public funds that have recently surfaced in other Florida communities and in other jurisdictions. They fervently hope his ministrations will be an effective antidote to several political maladies found in other communities: the soap syndrome — one hand washes the other; complacency — be concerned only when someone gets caught, and lockjaw — don’t rock the boat. If there is potential for public harm in what the clerk seeks to achieve in this case, the trial court did not perceive it nor do we. Appropriately, the trial court has retained jurisdiction to monitor carefully the impact and the implementation of its final judgment. It is prepared to respond quickly, as is this court if there is need to review subsequent orders.
ANSTEAD, C.J., and WALDEN, J., concur.